# The Toledo, Wabash and Western Railway Co.

*v.*

# Jesse H. Thompson.

1. CARRIERS OF STOCK—*negligence.* Where live hogs are shipped by railroad, it is the duty of the railroad company to apply water to them when heated and in danger of dying from the want of such an application; and it is gross negligence on the part of the company not to do so.

2. If water is scarce on the line of a railroad, so that it can not be provided for the purpose of applying to live hogs shipped in its cars when necessary, it is the duty of the company to inform shippers of the fact before they ship; and if such information is withheld, and hogs are shipped and die on the route for want of water, the company will be liable.

3. Where live hogs are shipped in railroad cars, and are doing well, and not suffering for water at a given point or station on the route, it is

not negligence on the part of the shippers not to water them at that point or station, in the absence of information that water can not be had at the next station; and if it is a fact that water is scarce at the next station, it is the duty of the company to inform the shippers of the fact, and it is gross negligence not to give such information.

4. It is *prima facie* evidence of negligence for a railroad company to permit its pump at a station to be out of repair, so that water can not be provided for live hogs on its train, and it is for the company to explain why the pump is so out of repair, and show that it is not by their negligence.

5. VARIANCE—*between the declaration and evidence.* The averment of a declaration in a suit for the value of hogs, which were shipped on defendant's railroad, and died through the fault of defendant, was, that the train was stopped and permitted to stand for a long space of time in a piece of timber, where the air could not circulate. The evidence showed that the train did stop in a piece of timber, as averred, but it further showed that it was in a cut on the road as well as in the timber: *Held*, that there was no variance.

APPEAL from the Circuit Court of Logan county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Mr. G. B. BURNETT, for the appellant.

Messrs. BEASON & BLINN, and Mr. E. LYNCH, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee sued the railroad company, in an action on the case, for injury sustained by the negligence of the company, in transporting a lot of hogs over their road. The hogs were put aboard of the cars at Mt. Pulaski, in Logan county, in this State, to be carried to Pittsburgh, in Pennsylvania. It appears that the weather was very warm, and a number of the hogs died, from overheating, in the cars. And the complaint is, that the agents did not nor would they throw water on them at their water tanks, at proper times, so as to preserve the hogs from dying from heat. On the other side, it is claimed that water was scarce, and that appellee's agent went on the same train to take care of the hogs, and neglected

his duty in not caring for the hogs, and that the negligence of the agent was as great or greater than that of the company.

It is urged that there was a variance between the averments of the declaration and the evidence introduced on the trial. It is averred that the train was stopped and permitted to stand for a long space of time in a piece of timber, where the air could not circulate. The evidence shows, that the train was stopped in a piece of timber, as averred, but it further shows that it was in a cut on the road as well as in the timber. This, we think, is no variance. It is not alleged that being in the timber was the sole cause of the death of the hogs. That was alleged to have been the hot weather, the refusal or neglect of the company to water the hogs, and the stopping at that place where the air could not circulate. The plaintiff is not bound to state all the minutæ or circumstances of his case, in detail. Had the place been on a grade of the road, it was not necessary to aver that fact; or if the place was exposed to the sun, and increased heat from that fact, we do not see that it would have been necessary to aver the fact before proof thereof could be made.

The averment is, that the train was allowed to stand for the space of two hours in a piece of timber, where the air could not properly circulate. The averment does not state that the timber was the sole or only cause of the non-circulation of the air. It is an averment as to a place, and as a fact that the air could not circulate at that place. It may be inferred that it was because there was timber there, but it is not a direct averment of the fact, and is but argumentatively stated. We have no doubt that it was proper to admit evidence that the cars stood in the cut at that place, and that it contributed to heating or suffocating the hogs, and, together with the neglect to remove them or to water them, as averred and proved, they died. There was no variance between the averment and the testimony.

The evidence shows, up to the time the train was stopped in the cut, the hogs were in good condition, and it was there they commenced dying, and not having been watered at that station or the next, seems to have contributed to the loss. The agent of plaintiff requested that the train be moved from the cut, and the hogs watered. but they were not removed, and were permitted to remain for an hour or more in that situation after the request was made, and they were not watered there, as we infer, because the pump was out of repair. To permit it to be out of repair, was *prima facie* evidence of negligence of the company, and they did not explain why it was, or show any excuse for its condition.     If not negligence, they could have shown it.     Nor were the hogs watered at the next station, as the conductor promised they should be, nor do they, as we think, show a sufficient reason for not doing so when they arrived there.     The engine was supplied with water at this latter station, and all of appellee's witnesses say there appeared to be an abundance of water for the purpose, and the agent managed to get water upon a portion of the hogs, equal to, perhaps, one car load.     The entire evidence considered, we are well satisfied that it justified the jury in finding the employees of the road were guilty of such negligence as to render the company liable.

It is insisted, the agent should have required the hogs to have been watered before reaching that point.     We fail to find any evidence that they required it, as the witnesses who speak on the subject say, the hogs, up to that time, were in good condition.     And no reason is shown why the train was not taken out of the cut, a place which, the evidence tends to show, was not its usual place of stopping, even if they could not be watered at that point.     This seems to have been the place where the trouble first commenced.     Had the conductor previously informed the agent of plaintiff that water could not be had at that station, then the company might, with some plausibility, say, the agent was guilty of negligence, had he refused to have them watered before reaching that station.

The agent could not be presumed to know that water would be wanting on the road, but the employees of the company must have known the fact, and, knowing it, they were guilty of gross negligence in not having water, or in not, at least, communicating the fact. The conductor had large experience in shipping stock, and it is a reasonable presumption that he knew the wants of such animals in being thus transported. He had no right to withhold the information. The employees of the road must use some diligence to aid the shippers of stock. They can not withhold such information, and permit shippers to hazard their property for want of information so easily communicated.

There is no pretense that any agent of the company notified appellee's agent that water was scarce on the road, so that he could have sought some other route to that market or sought some other market, or even that he might have acted differently in caring for the hogs. Good faith to him required that such information should have been given before he shipped. They had no right to entrap him into the loss, by failing to give him notice, that he might have averted the injury.

It is urged, that the hogs were driven and heated before they were placed on the cars, and were not watered in the pens before shipping. There is no evidence that there was means of doing so at the pens, nor does it appear that they suffered for water before they reached the place they were permitted to remain in the cut.

It is urged, that the hogs may have died of cholera. There was some evidence tending to prove that they may have died from that disease, but on that point the evidence was conflicting, and it was for the jury to find the fact, and we think their finding on that question is sustained by the evidence.

It is also urged, that the jury should not have allowed for all the hogs that died in the shipment. This was also a question for the jury. It may be, the probabilities are that a portion of them would have died under the most favorable

circumstances, but it is not clearly established that such would have been the case, and we see no reason for disturbing the verdict on that ground.

In the case of *The Illinois Central Railroad Co.* v. *Adams*, 42 Ill. 474, it was held, that it was gross negligence in the company not to apply water to hogs when heated, and in danger of dying from the want of such an application. This case, in that respect, is similar to the one cited, which is conclusive of that question.

Perceiving no error in this record, the judgment of the court below is affirmed.

*Judgment affirmed.*