McCay, Judge.
1. It is true the text books, including "our Code, do announce that a common carrier can set up no excuse for the loss or destruction of goods but the act of God or the enemies of the State. But this has been always qualified with certain limitations as to when his liability ceases, when he is discharged from further prosecution of his undertaking, as if the owner of the goods himself receives them short of the place of destination, or if they are not delivered by the fault of the owner; or that they have been taken from the carrier by title paramount, and lastly, that they have been taken from him by legal process. He has not lost the goods; they have not been stolen or been destroyed, but his undertaking as a carrier has been determined: Redfield on Carriers, sec. 24, note; see also same book, 245; 18 Vermont, 186; 11 Vermont, 323; 1 Duer, 79; 37 Barbour, 112. We admit that the process which terminates this employment must be a legal one: McClel. & Y., 136; 10 East., 530; 11 Z. B., 517. And that, we suspect, is the hinge on which this case turns.
2. Was this a legal process? Without question, th,e Court *that issued it had jurisdiction: See Revised Code, 3956. Did it substantially comply with all the requirements of the Code? See section 3956. If there was a substantial compliance, the warrant, though irregular, was not void: See Revised Code, section 4, paragraph 6. The warrant issues on affidavit that the plaintiff had possession; that he had been unlawfully deprived of it by the defendant, or that the property disappeared without his consent, and is now in possession of defendant. This affidavit, in substance, sets forth these very things. It says that affiant was in the legal, etc.; that the prop *326 erty was taken out of his .possession, without lawful authority, by some unknown person, and that said person put it on the cars of the Griffin & North Alabama Railroad Company where it now is, in the county of Spalding. What is wanting? It is said in the affidavit that the property was unlawfully taken, and that the unlawful taker put it on the cars of the railroad company. But it is said there is no defendant. Why not? The railroad company is charged to have the cotton; it is charged to be now on its cars. We doubt if, in any possessory warrant, there is a more distinct pointing out of a defendant than this. The person in possession is the defendant. The magistrate seems to have treated the unknown person as the defendant, as he fails to order any arrest of the true defendant, and does order the arrest of one who is not the defendant. But this is a mere irregularity. It does not make the warrant void. The command to arrest the unknown taker of the property, who has not the actual possession, is mere surplusage. Nor is the failure of the warrant to direct the arrest of the railroad company such a want as to make the warrant void. The company, as such, could not be arrested; and the want of authority to make an arrest is only a wrong to the suer out of the warrant. Could the company, if it had appeared, object to the warrant for this reason? We doubt if the Court issuing the warrant would have dismissed it for that reason, especially if the property had been before the Court, since the whole object of the arrest is to force the delivery of the property. We think, therefore, this was not a void warrant. The magistrate had * jurisdiction; the affidavit pointed out a defendant, and substantially charged that the property was in possession of that defendant, (the company,) without lawful warrant or authority; the other defect was a mere irregularity, since, by the production of the property, the arrest (notice being given,) was made immaterial.
3. We think the Court erred in the other charge. If the warrant was legal, it was not in bad faith to the consignor for the agent to furnish all proper facilities to the sheriff to perform his legal duty. The evidence shows nothing but a proper performance of that duty which every man owes, as a good citizen, to the majesty of the law. We should hesitate long before we would say there is any relation in life that would make it the duty of one to keep his doors locked to shut out the sheriff who comes to execute a legal process. He may do so, it is true, in a certain class of cases, and the law may thus be baffled, but we know of no case where it is a man’s duty to baffle the law.
4. The notice that is proven to have been given to both the consignor and consignee, and the total failure of both to furnish to the company any evidence to enable it to resist the sworn statement of the complainant in the warrant, we think justifies the company in not looking further after the cotton. It was but a fair presumption that, as-neither of them, seemed-to-.care to go any further about contesting the claim, that it was a just one.
judgment reversed.