74 351
63a 76

McALISTER, *Plaintiff in Error* v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY.

1. **Common Carrier**: TRANSPORTATION OF LIVE STOCK. In the absence of express contract or special circumstances making it the duty of a connecting carrier to continue the transportation of cattle in the same cars in which they are delivered to him, he has the right to unload for the purpose of transferring them to his own cars, provided this is done without unnecessary delay.

2. ———: ———. The fact that a contract for the transportation of cattle by rail provides that the owner shall be entitled to pass, free of charge, on the train with the cattle to take care of them, and that the cattle are to be fed, watered, loaded and unloaded by him at his own risk, does not confer on him the right to decide when, where and under what circumstances the loading and unloading shall take place; but rather imposes on him the duty of loading and unloading wherever and whenever the exigencies of the transportation may, in the judgment of the railroad company, render it necessary.

3. ———: ———: REMOTE DAMAGES. In the absence of evidence to show that a carrier receiving cattle for transportation from a connecting carrier was for any reason bound to continue the transportation

in the same cars in which the cattle came to it, or had notice that they were of a kind which it was unlawful to unload within the limits of the State, the receiving carrier will not be compelled to make good to the shipper damages sustained by him by reason of the seizure and sale of the cattle to pay a fine imposed upon him in consequence of its having, against his objection, unloaded the cattle for the purpose of reloading them into its own cars. Such damages are too remote and cannot be held to have been within the contemplation of the parties.

4. **Unconstitutional Statute**: ACTION. The seizure and sale of one's property to pay a fine imposed under the provisions of a statute which is subsequently decided to be unconstitutional, cannot form the basis of an action against a person who committed an act which led to the imposition of the fine.

5. ———: WRIT: BAILMENT. It seems that a bailee will not be held liable in damages for permitting the property of his bailor to be taken out of his custody upon a writ issued under a statute which is subsequently decided to be unconstitutional. He is not bound to know that it is unconstitutional.

*Error to DeKalb Circuit Court.*—HON. JOSEPH P. GRUBB, Judge.

AFFIRMED.

*William Henry, W. J. Franklin* and *S. S. Brown* for plaintiff in error.

The defendant had no right to disregard the instructions of plaintiff by unloading and delaying the transporting of the cattle. 2 Redfield on Railways, (5 Ed.) 15; *Streeter v. Horlock,* 7 Moore 283; s. c., 1 Bing. 34. Defendant forcibly unloaded the cattle and thus committed the offense for which the prosecution was instituted against plaintiff. Wag. Stat., 251, §§ 1, 2. So that the loss of the cattle was the direct result of defendant's wrongful act. The judgment under which the cattle were sold was void so far as it authorizes such sale, and constitutes no defense to this action. The cattle were in possession of defendant, and it had no right to surrender them without process. *Gilmore v. R. R. Co.,* 67 Mo. 323.

McAlister v. The Chicago, Rock Island & Pacific Railroad Company.

*Shanklin, Low & McDougal* for respondent.

1. The petition does not show that defendant was under any obligation to transport the cattle to Lineville in the Hannibal cars. It was not bound to do so by virtue of being a common carrier; (*R. R. Co. v. Morton*, 61 Ind. 574;) nor by virtue of any provision of the contract.

2. The damages claimed are too remote. The unloading of plaintiff's cattle was not the proximate cause of his loss. He does not say that his cattle were Texas, Mexican or Indian cattle, and that they could not be unloaded without exposing him to arrest and fine. The petition does not in terms deny that the charge made against him was true; he says he did not have time to disprove it. Whether this be treated as an action *ex contractu* or *ex delicto*, the defendant is not liable unless it exposed plaintiff's cattle to danger which it knew, or with ordinary forecast and prudence might have foreseen. Angell or Carriers, (5 Ed.) 432, § 482a; *Cutting v. R. R. Co.*, 13 Allen 381, 384 ; *Hadley v. Baxendale*, 9 Exch. 354; *Clemens v. R. R. Co.*, 53 Mo. 366 ; *Vicksburg, etc., R. R. Co. v. Ragsdale*, 46 Miss. 458.

3. This is not a suit to recover damages occasioned by delay in transporting or delivering freight; nor is it sought to recover for any depreciation in value of the freight by reason of anything done or omitted to be done by the defendant. The plaintiff seeks to recover damages on the ground that his freight was unloaded from certain cars against his will, whereupon he was wrongfully arrested for unlawfully bringing his cattle into the county, and subjected to a fine because he had not time to prove his innocence of the charge, whereby cattle of the value of $5,000 were sold to pay a fine and costs, amounting to $216.10. In the first place, the petition fails to show that plaintiff was arrested because the cattle were unloaded at Cameron ; that was not the complaint made in the affidavit and could not affect his liability. The petition shows that these cattle

23—74

354 SUPREME COURT OF MISSOURI,

were loaded into the Hannibal cars in this State, and that fixed plaintiff's liability under the 1st section of the Texas Cattle Law, (1 Wag. Stat., 251, §§ 1, 2,) if the cattle were Texas, Mexican or Indian cattle. In the second place, if the unloading of the cattle was the offense which subjected plaintiff to a fine, it does not seem clear how he could be made liable when they were not only not unloaded by him, but were unloaded by another against his will and in the face of his earnest protest. And in the third place, even though the defendant, knowing it was thereby subjecting the plaintiff to liability to be fined, wrongfully unloaded his cattle, thereby subjecting him to fine and costs, it would only be liable for the amount of such fine and costs, not for the value of plaintiff's property that he might permit to be sold to pay the fine and costs.

4. The plaintiff could not rightfully be subject to fine unless he had been guilty of some offense, and it will not do for him to say that because some wrongful act of defendant led to his conviction of an offense which he had committed, the defendant must pay his fine and indemnify him against all the remote consequences of such conviction.

5. The fact that the law under which plaintiff was arrested and fined has since been held unconstitutional, cannot possibly help the plaintiff; for he does not admit that his cattle came within the purview of the law. Hence whether the law was valid or invalid is immaterial so far as defendant is concerned. It is not sued for having improperly surrendered the cattle to the officer. The writ justified the officer in seizing and selling the property. And again, if the law was invalid, it was not unlawful to unload at Cameron, and the defendant was not bound to foresee that plaintiff would be convicted and fined by reason thereof.

RAY, J.—The petition, demurrer and judgment thereon constitute the record in this case The petition states that the defendant is a corporation, owning and operating a

line of railroad in the States of Missouri and Iowa, which extends between the town of Cameron, in Missouri, and the town of Lineville, in Iowa; that the Hannibal & St. Joseph Railroad Company is also a corporation owning and operating a line of railroad extending between Kansas City, Missouri, and the said town of Cameron, at which last named point, the latter railroad connects with that of the defendant, forming with defendant's said road, a continuous line of railway between said Kansas City and said Lineville; that on the 24th day of July, 1873, plaintiff turned over to said Hannibal & St. Joseph Railroad Company, at Kansas City, 118 head of cattle for transportation to said Lineville, and that the said Hannibal & St. Joseph Railroad Company then and there received said cattle, and entered into a contract, by the terms of which it then and there, for a valuable consideration then paid by plaintiff, undertook and promised to and with plaintiff, to deliver said cattle at said Lineville; that it was provided by the terms of said contract, that two men, in charge of said cattle, should pass, free of charge, on the train, with said cattle, to take care of same, and that said cattle were to be taken care of, fed, watered, loaded and unloaded by plaintiff, at his own risk in all respects; that it was further provided in said contract, that the said Hannibal & St. Joseph Railroad Company should not be responsible for any loss or damage which might arise after said cattle were delivered at a point on its line, where they were to be delivered to any other company for further transportation; that said Hannibal & St. Joseph Railroad Company undertook and promised to deliver said cattle to said other company, and to contract with such other company, for and on behalf of plaintiff, for such further transportation according to the terms and stipulations in said contract contained.

The petition then further alleges that on the said 24th day of July, 1873, the plaintiff loaded said cattle into four certain cars furnished by the said Hannibal & St. Joseph Railroad Company for that purpose, and that the same

were taken by said company to said town of Cameron, and said cars containing said cattle were then placed on the side-track of defendant, and were then and there turned over with said cattle therein contained and loaded to the defendant for further transportation to Lineville as aforesaid; that the defendant then and there took and received said cars with said cattle, and, for like valuable consideration, undertook, promised and agreed to and with the plaintiff (and to and with the said Hannibal & St. Joseph Railroad Company, which was then and there acting for and on behalf of plaintiff), to transport and carry said cattle to said town of Lineville according to the terms and stipulations of said contract; that the said Hannibal & St. Joseph Railroad Company then and there furnished to defendant for that purpose its said cars, in which said cattle were then loaded; that defendant then and there had the necessary engines and servants for hauling said cars; that one of defendant's freight trains into which said cars might have been incorporated and coupled, without detriment or inconvenience to defendant, was then about to leave defendant's yard at Cameron on its way to said Lineville; that plaintiff, who had accompanied said cattle for the purpose aforesaid, directed the defendant to forward said cattle in said cars, so furnished by the Hannibal & St. Joseph Railroad Company, without unloading or unnecessary delay; but that the defendant, disregarding his said directions, did, at the county of DeKalb, negligently, willfully and wrongfully, by force and against his urgent request and protest, unload said cattle out of said cars, and place them in its stock-yard in said county of DeKalb.

The petition then further proceeds to state that after the unloading of the cattle as aforesaid, and while said cattle were wrongfully detained by defendant in its stock-yards, to-wit: on the ——— day of July, 1873, one Handy and one Kirkpatrick of said county of DeKalb, and State of Missouri, made affidavit before one Stewart, a justice of the peace, in and for said county and State, charging

this plaintiff with bringing into said county Texas, Mexican and Indian cattle, and that thereupon said justice issued a warrant for the arrest of this plaintiff, under and by virtue of the provisions of the statute in such case made and provided, and delivered the same to one Thompson, a constable, and that said constable then and there arrested this plaintiff and took said cattle from the defendant's stock-yards; that said constable thereupon took plaintiff before said magistrate, who caused the matter charged in said affidavit and warrant to be summarily inquired into by a jury of six men, who found the plaintiff guilty of said matter charged in said affidavit and warrant, and assessed his fine at the sum of $100, which, with the cost of said proceedings and the taking charge of and feeding said cattle by said constable, amounting to the sum of $216.10, was adjudged against this plaintiff in said proceeding; that plaintiff was allowed no time to procure evidence that said cattle were not Texas, Mexican or Indian cattle, and that the cattle were all sold to satisfy said fine and costs, and then and thereby became and were a total loss to plaintiff. Wherefore plaintiff says that by reason of said premises and said wrongful acts of defendant, its agents and servants aforesaid, in and about the care and transportation of said cattle, he is damaged in the amount of $5,000, for which he asks judgment.

To this petition the defendant demurred on the ground that it did not state facts sufficient to constitute a cause of action. This demurrer was sustained by the court, and the plaintiff declining to plead further, the court gave judgment for defendant. Whereupon the plaintiff brings the cause here by writ of error.

It is insisted by the plaintiff in error, that the circuit court committed error in sustaining this demurrer; and we are called upon to pass upon that question. Before proceeding to the examination of this question it may be proper to remark that this suit was brought, tried and disposed of in the court below, upon the theory that the stat-

ute therein referred to, prohibiting the introduction of Texas, Mexican and Indian cattle into this State, at certain periods and under certain restrictions, was a valid enactment. Since that trial, said enactment has been judicially declared unconstitutional and void. We will first consider the case upon the theory that said enactment was a valid enactment; and see if, even upon that theory, the petition was sufficient; and then consider whether the invalidity of that enactment can help the plaintiff in error, under the facts of his case, as stated in this petition.

Upon examination of this petition, it will be observed that it nowhere appears that when the plaintiff turned over 1. COMMON CAR- the cattle in question to the Hannibal & St. RIER: transporta- tion of live stock. Joseph Railroad Company, and placed them in its cars for transportation across the State from Kansas City, Missouri, to Lineville, Iowa, he notified said company that said cattle were Texas, Mexican or Indian cattle, and could not, for that reason, be unloaded at any point in their transit across the State; nor does it appear that said company otherwise had knowledge of that fact. Indeed it is nowhere averred in said petition that said cattle were of that class; but, on the contrary, it is impliedly denied that they were. One of plaintiff's grievances, when brought before the justice for violating the statute prohibiting the introduction of such cattle into the State, was that he was allowed no time to procure evidence that said cattle were not Texas, Mexican or Indian cattle. Nor does it anywhere appear that said Hannibal & St. Joseph Railroad Company, in its said contract of shipment, agreed that said cattle should be transported across the State in these particular cars, or that they should not, under any circumstances, or for any purpose, be unloaded therefrom; nor are any facts stated from which it was, or might become, its duty so to transport them. Said Hannibal & St. Joseph Railroad Company did agree to deliver said cattle at said Lineville; and for that purpose further agreed to deliver them to said connecting company, and to contract with it for and on

behalf of plaintiff, for such further transportation, according to the terms and stipulations in said contract contained; and no such terms or stipulations appear in their said contract of shipment; nor are they implied, as a duty, from any of the facts stated.

When said cars, with said cattle therein loaded, reached the town of Cameron and were turned over to defendant for further transportation to Lineville, it nowhere appears that this defendant was notified of the fact that said cattle were of the prohibited class, hereinbefore mentioned; and, for that or any other reason, could not be unloaded from said cars; or that the defendant otherwise had knowledge of such fact. It is by no means clear, nor is it even to be inferred, from the facts stated, that this defendant made any other contract, or assumed any other duty in any of the particulars mentioned, than that made and assumed by the said Hannibal & St. Joseph Railroad Company, from which it received said cattle for said further transportation. On the contrary, when this defendant took and received said cars and said cattle, it is expressly stated that it undertook, promised and agreed, to and with the plaintiff (and to and with said Hannibal & St. Joseph Railroad Company, for and on behalf of plaintiff), to transport and carry said cattle to said town of Lineville, according to the terms and stipulations of said contract. What contract is here meant or referred to? Manifestly, the original contract made with the said Hannibal & St. Joseph Railroad Company for the shipment in question. As before observed, no such terms or stipulations as contended for by plaintiff in error are found in said contract; nor is any such duty to be inferred from the facts so stated.

The fact that said contract provides that two men, in charge of said cattle, should be entitled to pass, free of charge, on the train with the cattle, to take care of same, and that said cattle were to be taken care of, fed, watered, loaded and unloaded by the plaintiff at his own risk, in all respects, did not confer on him the right

to decide when, where and under what circumstances said loading and unloading should take place; but rather imposed on him the duty of loading and unloading, whenever and wherever the exigencies of said transportation might render the same necessary and proper. Such a provision, manifestly, was never intended, nor can it be justly held to deprive the railroad company of its just, rational and necessary discretion of determining when the exigencies of transportation may require the same to be done.

The fact, therefore, that plaintiff assumed to direct, and did direct the defendant to forward said cattle, in said cars, so furnished as aforesaid, without unloading, or unnecessary delay, did not impose on defendant the duty of obeying that direction, nor make it liable for any damage not the necessary and proximate result of said unloading. If said enactment had been valid, and the proper facts had been stated, so as to show why said unloading should not have been made, then it would have been the duty of the defendant to have forwarded them without unloading, whether expressly directed or not. Its duty, under such circumstances, would have arisen from the facts stated, and its failure so to do would have been a violation of its duty and rendered it liable for the damages resulting therefrom. In such case such damages would have been held to be within the contemplation of the parties to said contract at the time of making the same. But there is a total absence of the statement of any such facts at any time prior to the unloading complained of. Up to that time there is no intimation that said cattle were Texas, Mexican or Indian cattle; or if so, there is no pretense that any notice thereof had been communicated to defendant, or that it otherwise had knowledge thereof. It was manifestly too late to impart that information, or give that notice, for the first time after the unloading complained of had been already accomplished. From aught that appears in the petition, said unloading might have been, and it is fair to infer, was made for the purpose of transferring said cattle to its own

cars for further transportation, which it undoubtedly had
the right to do in the absence of any contract to the con-
trary, or any statement of facts showing that it was its
duty not to have done so, unless it appeared that such un-
loading and transfer occasioned some unnecessary delay.

It must be observed that this is not a suit to recover
damages arising from delay in the transportation or delivery
3. ——: ——: of freight, or from a depreciation in the
remote damages. weight or market value of said cattle by rea-
son of anything done or omitted by the defendant. On
the contrary, the plaintiff seeks to recover damages for an
alleged wrongful unloading of his cattle from certain cars,
contrary to his directions and wish, whereupon certain
other parties, entire strangers to the defendant, and over
whom it had no control, acting under the forms of the law,
caused his arrest and the seizure of his said cattle for an
alleged violation of the statute of the State prohibiting
the introduction of Texas, Mexican or Indian cattle into
this State, except under certain limitations and restrictions
therein contained. In this connection it is further charged
that the plaintiff was thereupon summarily tried and con-
victed of said charge, and his fine assessed at the sum of
$100, which, with the costs of said proceedings and taking
charge of and feeding said cattle, amounting to the sum
of $216.10, was adjudged against the plaintiff in said pro-
ceedings; that plaintiff was allowed no time to procure
evidence that said cattle were not Texas, Mexican or In-
dian cattle; and that the said cattle were all sold to satisfy
said fine and costs, and then and thereby became and were
a total loss to the plaintiff. From this statement it is man-
ifest that his said damage is the direct and immediate result
of said arrest and seizure by said third parties, for whose
conduct and acts this defendant is in no way responsible.
In such case it is equally clear that said alleged wrongful
unloading was not the proximate cause of said loss or dam-
age. It is not even alleged, that except for the unloading,
the arrest and seizure could not, and would not, have taken

place; nor are any sufficient facts stated, whereby it be-
came and was the duty of the defendant not to unload
them. In the absence of any such statement, defendant
certainly had no right to anticipate or apprehend any such
consequences as followed. It is clear, we think, from all
the authorities, that such consequential damages are too
remote, and cannot be held, under the facts in this petition,
to have been within the contemplation of the parties to the
agreement and shipment when the same was made. *Cut-
ting v. R. R Co.*, 13 Allen 381 to 384; *Hadley v. Baxendale*,
9 Exch. 354; *Clemens v. II. & St. Jo. R. R. Co* , 53 Mo. 366;
*Vicksburg R. R. Co. v. Ragsdale*, 46 Miss. 458.

There are other objections to this petition not neces-
sarily fatal, perhaps, but which deserve notice in passing.
The petition discloses the fact that the plaintiff's said ship-
ment of cattle was not exempt from the penalties of this
statute, provided the same had been valid, even if the cattle
had not been unloaded as charged. The petition shows
that said cattle did not come across the line of the State,
loaded upon these cars as contemplated by that statute, but
were turned over to said Hannibal & St. Joseph Railroad
Company, and placed upon their cars within the State, to-
wit: at Kansas City. See 1st and 2nd sections of 1st
Wagner, 251.

Nor is it anywhere averred that the cattle, for the loss
of which this complaint is made, were of any value what-
ever. Ordinarily it is usual and proper, if not material,
where damages are sought for the loss or destruction of
property, to charge and prove that it was of some value at
least.

The case of *Streeter v. Harlock*, 7 Moore 283, and 1
Bing. 34, to which we are cited by plaintiff in error, is
not applicable to the facts of this case. There the orders
and directions of the shipper were given before the freight,
or the greater part at least, was received, and became and
were a part of the contract. Here the directions to for-
ward the cattle without unloading were not given until

after they had been received under the original contract with the Hannibal & St. Joseph Railroad Company, and constituted no part of this agreement.

But we are now told by the plaintiff in error that the statute under which he was arrested and fined has since 4. UNCONSTITUTION- been held unconstitutional. We do not see AL STATUTE: ac- how this can help him. If the law was invalid it was not unlawful to unload the cattle in Cameron; besides that, he nowhere charges or admits that his cattle came within the purview of that statute. If they did not, it is immaterial whether the same be valid or invalid. In no event is he liable to its penalties or the defendant a wrong-doer by reason of having unloaded them at the place charged, provided no unnecessary delay in their transportation was necessarily occasioned thereby. The fact that they were thereupon seized by third parties, (over whom defendant had no control,) under the forms of the law, and were ultimately sold to satisfy the fine and costs adjudged in said proceedings, and were thereby lost to the plaintiff, does not render the defendant liable for the damage thus sustained.

It is not sued for improperly surrendering the cattle to an officer under void process. And if it was, the writ, 5. ———: writ: if not void on its face, would justify the bailment. officer and protect the defendant in surrendering the cattle thereunder. It is not charged that the writ was invalid upon its face. The defendant was not bound to know that the law, under which the proceedings were had, was unconstitutional. The legislature had enacted it under all the forms of the constitution; the judicial proceedings thereunder were regular on their face, and up to that time no court had ever declared the same unconstitutional and void.

But in any event, whether the law be valid or invalid, the damages in question were the direct result of said legal proceedings instituted and carried out by third parties, who were entire strangers to the defendant, and for whose

acts and doings, whether right or wrong, it is in no way responsible. In no event was the unloading of said cattle the proximate or necessary cause of said loss. The defendant was not bound to anticipate or apprehend that such proceedings, whether right or wrong, would be instituted, and the damages so resulting are too remote to be chargeable on the defendant. There is, therefore, no error in the record, and the judgment is affirmed. All the other judges concur.