ALABAMA & VICKSBURG RAILWAY COMPANY v. PAUL TIRELLI
ET AL.

[48 South. 962.]

CARRIERS. *Railroads. Failure to deliver freight. Excuses. Quarantines.*

A common carrier is excusable for not delivering perishable freight, which decayed in its possession, if it were prevented from doing so by municipal quarantine officers, backed by the municipality, having physical power and a purpose to enforce the prevention, where it inevitably would have been brought into collision with them had it persisted in efforts to deliver the freight, although the ordinance of the city under which they were acting was not applicable to the case.

FROM the circuit court of Warren county.

HON. J. N. BUSH, Judge.

Tirelli and another, partners doing business under the co-partnership name, "Tirelli Brothers," appellees, were plaintiffs in the court below; the railway company, appellant, was defenant there. From a judgment in plaintiffs' favor, defendant appealed to the supreme court.

The facts are stated in the opinion of the court.

*McWillie & Thompson,* for appellants.

The conclusion reached on the trial of this cause by the court below was one of intolerable hardship upon the appellant and as we submit was unjust and illegal.

The alleged delinquency of the appellant is its failure during a yellow fever scare to deliver to appellees, consignees, at Vicksburg a car-load of bananas which had been shipped from Mobile and by the appellant received from the Mobile & Ohio Railroad for carriage to Vicksburg. That the appellant was prevented from delivering the bananas to the consignees by the municipal authorities of Vicksburg is beyond all question, and it is equally

true that if they had been delivered to the consignees the latter would not have been allowed to sell and distribute them. The bananas were promptly transported to Vicksburg by the appellant and reached there in good condition, but by the intervention of the civil authorities the appellant was not allowed to complete its contract by delivery to the consignees. The consignees refused to order any disposition of the bananas and appellant then undertook to transport them back to Mobile, but the Mobile & Ohio Railroad Company refused to receive and forward the car to Mobile, whereupon the appellant forwarded the goods over the New Orleans & Northeastern Railroad to the city of New Orleans where the shippers, S. Oteri & Company, who did business in both cities, were promptly notified of their arrival and called upon to give some order as to their disposition. This Oteri & Company declined to do, whereupon the car was opened by the New Orleans & Northeastern Railroad Company and the bananas being found to be utterly worthless the entire contents of the car were thrown away.

The city of Vicksburg was authorized under its charter to adopt and enforce quarantine regulations, and did on July 24, 1905 and July 28, 1905, adopt very rigid quarantine regulations; that of the first date being against persons, baggage and household goods coming by rail from New Orleans, and that of July 28th being against bananas and other commodities coming from the same city. We refer the court to the evidence showing the actual presence and intervention of the police and to the communication addressed to the superintendent of the railway company at Vicksburg by the chief of police of that city on the arrival of the bananas on July 29, 1905, in which the delivery to the consignees was positively forbidden, coupled with the statement that the consignees had been notified that the bananas should not be distributed by them as well as should not be delivered by the carrier within the city. The matter being called by the appellant to the attention of the mayor and city physician they upheld the chief of police in the position he had taken

and instructed them to order the car to be taken out of the city
.and not to permit its being unloaded therein.  As the quarantine
established by the city did not include shipments from Mobile
it may be that the municipal authorities based their action on
the fact that the shipment was from a New Orleans dealer and
the difficulty of telling definitely in such case whether the ship-
ment had originated in Mobile actually or only ostensibly, al-
though it is also possible they were simply giving way to the
wild and unreasoning excitement that formerly spread over our
state on the appearance of yellow fever in New Orleans.

. However this may be, it is evident that the appellant simply
yielded to *vis major*.   The police were on hand ready to prevent
by force the unloading of the car, and it was not necessary for
the appellant to provoke violence in order to avoid liability.
The resolutions adopted by the city council did not cover ship-
ments from Mobile but it was unavailingly made known to the
authorities that the one in question was of that character.   The
chief of police with his myrmidons at his back was ready to see
that the car was not unloaded.   He had the "big stick" and was
ready to use it in carrying out his demands.   He represented
the element of force in the municipal government.

This court has held that although a quarantine order be void
if it be maintained by *vis major,* a railroad company may
yield thereto without actual collision and defend a suit by show-
ing that the real cause of its action, or failure to act, complained
of in the suit, was such uncontrollable necessity.   *Wilson v.
Ala., etc., R. Co.,* 77 Miss. 714, 719, 28 South. 567.   This ut-
terance precisely covers the case at bar, and is conformable to
reason and the natural sense of justice with which we are en-
dowed from on high.

This is not a case where the carrier acted merely upon the
order made by a distant board of health having at hand no ade-
quate force to compel obedience.   The force was present and so
brought to bear upon the carrier that there was nothing left for
it to do but submit or bring about a collision.

*Bryson & Dabney,* for appellees.

·We cannot agree with counsel for appellant that the conclusion reached by the learned circuit judge was one of "intolerable hardships upon the appellant and was unjust and illegal." On the contrary, any other conclusion would have been an intolerable hardship upon the appellees.

Neither can we agree to the further proposition advanced by counsel that the railroad company was prevented from delivering the bananas by the municipal authorities of Vicksburg, nor do we think that they are justified in the conclusion that had the bananas been delivered, appellees would not have been permitted to sell and distribute them. It is true that the city of Vicksburg by its charter was authorized to adopt and enforce quarantine regulations, but only "by ordinances and resolutions adopted at any regular or special meeting" of the city council, and it is true that a quarantine was in force against New Orleans and Memphis, but the ordinance creating this quarantine confined the same strictly to those two cities and the actions of the committee in whose hands was placed the carrying out of the quarantine and of the chief of police, the executive officer of this committee, were not in pursuance of the resolutions adopted by the board of mayor and aldermen, but were entirely without warrant or authority.

There was no *vis major* in this case. The railroad company, without protest, yielded to the written instruction of the chief of police directing it not to deliver the car but to remove it from the city. No investigation was made as to the validity of this order. No consultation was had by the railroad officials with their attorneys for the purpose of ascertaining their legal rights and those of appellees. There was no armed force present to see that these orders were carried out, but on the other hand the orders were given in a letter that was presumably either mailed or sent by some messenger and thus delivered to the superintendent. The verbal order was given by the chief of police to Superintendent·Ford prior to the writing of the letter.

The date of the latter is July 29th.   The car was not removed from the city until the 30th and surely the railroad officials had ample time and opportunity to look into their rights before complying with this order.

We are unable to see the distinction attempted to be drawn by the learned counsel between this case and *Wilson v. Railroad,* 77 Miss. 714, 28 South. 567.

In the case of *Yazoo, etc., R. Co. v. Blum,* 88 Miss. 180, 40 South. 748, it is said:

The true rule applicable here is stated in the Ragsdale case (46 Miss. 478), referred to as follows: "When property is delivered to a carrier, the law implies a contract that it shall be safely and within a reasonable time carried to and delivered, at the place of destination.   Nothing relieves from the obligation to deliver, except the act of God, the public enemy, the act or conduct of the owner, or a special agreement limiting the common law duty, if the time is not named."

We doubt whether the railroad company would be in any better attitude with reference to this transaction had the city regularly passed an ordinance quarantining against Mobile, as there was neither fever nor rumors of fever in Mobile at the time.

FLETCHER, J., delivered the opinion of the court.

In 1905, the city of Vicksburg was in the throes of a yellow fever panic, and the city council had by ordinance established a quarantine against all bananas from New Orleans.   The ordinance further created a sanitary commission, composed of the regular sanitary committee of the board, the mayor, and city physician, and this commission was given power to enforce the quarantine regulations of the city.   Appellee purchased a car load of bananas in Mobile, against which city no quarantine had been established, and the fruit reached Vicksburg over the line of appellant's railway.   Upon the arrival of the bananas at Vicksburg, the railroad company was notified by the chief of police, both verbally and by formal written notice, that the

bananas must not be delivered to appellee, and that appellee would not be allowed to unload and distribute the bananas, even if delivery were made. It was shown that the chief of police was acting under specific instructions from the sanitary commission as to this particular shipment. The railway company, under these circumstances, declined to deliver the bananas; and, appellee refusing to direct any other disposition, the car was attempted to be returned to the shipper, who, however, declined to receive same. Ultimately the car was sent to New Orleans, and the fruit was wholly destroyed and lost. Tirelli Bros. brought this suit against the railway company for the value of the bananas, and, the case being submitted to the court upon an agreed statement of facts, recovery was had for the amount sued for. Hence this appeal.

Both sides rely upon the case of *Wilson v. Alabama Great Southern R. Co.,* 77 Miss. 714, 28 South. 567, 52 L. R. A. 357, 78 Am. St. Rep. 543. In that case the railroad was held liable for damages in forcing a passenger to disembark at the Mississippi state line on account of a void ordinance of the Mississippi state board of health. In this case no actual force was employed by the Mississippi authorities to compel obedience to their orders. The ordinance had been adopted, and notice given to the railroad companies; but it does not appear that any officers were present to enforce the orders. The only compulsion under which the railroad company acted was constructive, and not actual—such compulsion as arose from the mere promulgation of the order. But in the case at bar the chief of police at Vicksburg and his cohorts, backed by the sanction of the city authorities, were there physically and actually present, prepared to enforce obedience to their orders, and the company would have inevitably been brought into collision with them, had it persisted in its purpose to deliver the car. In our opinion, the case falls precisely within the rule laid down in the *Wilson case*: "The railroad company must take the risk, as all citizens do, as to the validity of such orders, when it yields to the order alone;

and when its defense is, not that it yielded obedience because only of the order, but because also of *vis major*—a shotgun quarantine, for example—its defense will be maintained if it shall appear that such *vis major,* such uncontrollable necessity, was the real cause of its action. It need not go to the extent of actual collision with force marshaled by necessity, but it must show its action was due to such force existing ;and capable of controlling its actions."

It is no answer to this language to say that no ordinance of the city prohibited the importation of bananas from Mobile. This is true; but the company is. not bound to maintain an armed force to resist and overpower the marshaled hosts of the city police, acting under instructions from the executive department of the city government. We think the judgment should have been for the appellant.

*Reversed and remanded.*