SOUTHERN EXPRESS COMPANY *v.* SOTTILE BROTHERS.

Where, after arrival at destination, an interstate shipment of intoxicating liquors stored in the warehouse of a common carrier is, over his protest and without fraud, collusion or connivance on his part, seized by public officials acting under warrant issued in conformity to a law authorizing such seizures by such officials in enumerated instances, which law provides for the keeping of such liquors for 30 days before they shall be destroyed or become forfeited to the State, and authorizes the bringing of an action by any person to recover the same, and the carrier

notifies the consignor, or the consignor has actual notice, of such seizure in time to bring an action to recover the goods under the provision of such law, the carrier is relieved from liability to the consignor for non-delivery to the consignee, even though such law may be unconstitutional; it never having been judicially declared so.

FEBRUARY 18, 1910.

Action for damages. Before Judge Hammond. Richmond superior court. January 23, 1909.

*William K. Miller* and *McDaniel, Alston & Black,* for plaintiff in error. *Archibald Blackshear* and *Samuel H. Myers,* contra.

HOLDEN, J. Sottile Brothers (hereinafter called the plaintiffs) brought suit in the superior court of Richmond county against the Southern Express Company for the value of certain cases and casks of liquors alleged to have been delivered to it by the plaintiff at Augusta, Ga., for shipment from that point to named consignees at Charleston and Middendorf, S. C. It was alleged that the liquors were ordered by the consignees for their personal use. To the petition a general demurrer was filed, and to an order overruling the same the defendant excepted. A copy of portions of the law of South Carolina, known as the dispensary law, approved February 16, 1907, was attached to the petition. It made it unlawful for any common carrier or its agents or servants, or any person, to carry or transport liquors for unlawful use to any county or place where the sale of liquor was prohibited. The act prohibited the sale of liquors in that State, except in a dispensary. The law set forth as an exhibit with the petition was in part an inspection law. The 1st section declared certain liquors, which had not been tested "as hereinafter provided," to be contraband. The only provision appearing in the record before us which could relate to inspection is set out in these words: "Section 8. It shall be the duty of the Board to cause an analysis of the liquors to be made, etc." Hence, we can not say from the record before us whether the law in question did, or did not, by its terms attempt to subject liquors under the conditions dealt with in the present case to any inspection. The law invoked being statutory law of a sister State, we take no judicial cognizance thereof, but can only deal with it as pleaded. No contention is made by counsel that there was no provision requiring the inspection of liquors under the circumstances presented by this case. One of the provisions contained therein was as follows: "All alcoholic liquors in possession of any person for unlaw-

ful use shall be seized without warrant; and if no action to recover same is begun within thirty days from such seizure, or if such action be begun and the judgment of the court be adverse to the plaintiff, then such liquors shall be forfeited to the county in which the same is seized, if there be a Dispensary in said County, and disposed of as the County Dispensary Board may deem best; but if there be no Dispensary therein, such liquors shall be destroyed publicly by the Sheriff of the County." This law also provided that upon affidavit made, stating that contraband liquor was being "unlawfully concealed, kept, or stored in any place, a search warrant may be issued by any magistrate of the county, empowering any officer or person who may be deputized to enter the said place," and to search the premises for the purpose of seizing the contraband liquors, "which said liquor, when so seized, shall be disposed of as hereinbefore provided for the disposition of unlawful liquors." To the petition was attached a copy of the warrant and the affidavit upon which it issued, under which the shipments to Charleston were seized. The affidavit prayed "that such contraband liquors may be brought before this Court and such action taken concerning the same as is authorized by law." The magistrate before whom the affidavit was made issued a warrant commanding the officer "with necessary and proper assistance to enter" upon the designated premises of the defendant "and parties unknown," and to bring the liquors found "and deposit the same with the sheriff, which said articles are there to remain, to be disposed of as required by the provisions of the Dispensary Laws." The petition alleges: "After seizure the whiskeys were deposited by the officer with the tribunal pointed out by the laws of South Carolina to be disposed of as provided by law," and the liquors shipped to Middendorf, S. C., were seized "under a similar warrant" by the sheriff, who destroyed the same. The presumption is that in obedience to the mandate of the warrant the sheriff carried the liquors seized at Middendorf before the court, and if they were destroyed after the expiration of thirty days, it was because no action to recover the same was begun within thirty days from the seizure, or, if begun, the judgment of the court was adverse to the party bringing the action, and there was no dispensary in the county in which Middendorf was situated. The seizure of the liquors at Charleston was made on September 12, and the defendant between September 12th and 15th

notified the plaintiffs of such seizure, but they did nothing except to demand the value of the shipments from the defendant. It is not expressly alleged that the plaintiffs had notice of the seizure made at Middendorf, but, under all the allegations of the petition, we think a proper construction thereof is that the plaintiffs had notice of this seizure. The liquors seized in each instance were in the warehouse of the Southern Express Company at the place of destination.

The plaintiff contends that any law providing for the warrant under which the seizures were made before the interstate shipment of liquors was actually delivered to the consignees was unconstitutional, because of the commerce clause of the constitution of the United States, and for other reasons; and that the loss of the liquors by reason of a seizure under such law did not relieve the defendant from liability to the plaintiffs for failure to deliver to the consignees. One of the contentions of the defendant is, that, even if such law is unconstitutional, the liquors were seized by officers designated by the law, under process issued in conformity to the law, and, as the consignors had notice of the seizures in time to assert their claim to the goods before they were destroyed in the county in which Middendorf is situated, and before they were destroyed or forfeited in the county in which Charleston is situated, that there can be no recovery by the plaintiffs. It was held by this court in the case of *Southern Ry. Co.* v. *Heymann,* 118 *Ga.* 616 (45 S. E. 491) : "Intoxicating liquors which have been shipped from Augusta, Georgia, to persons in Charleston, South Carolina, and which have reached Charleston and been placed in a freight-warehouse of the railroad company in that city to await the call of the consignees, have "arrived" in the State of South Carolina, within the meaning of the act of Congress of August 8, 1890 [c. 728, 26 Stat. 313, U. S. Comp. St. 1901, p. 3177], known as the Wilson act." It was further held: "A railroad company is not liable for loss of property entrusted to it for shipment, occasioned by seizure of the property by an officer of the law under a prima facie valid authority." The decision in this case was reversed by the Supreme Court of the United States in the case of *Heymann* v. *Southern Ry. Co.,* 203 U. S. 720 (27 Sup. Ct. 104, 51 L. ed. 178). On page 727, that court said: "The conclusion that the court below erred in declining to follow the prior rulings of this court construing the

Wilson act disposes of the entire controversy arising on the record before us, for the following reasons: In its answer filed in the trial court the railroad company substantially defended alone upon the ground that the seizure was rightful. And the Supreme Court of Georgia treated the liability of the defendant as depending solely on the validity of the seizure. . . Moreover, in this court counsel in their brief on behalf of the defendant in error rely exclusively upon the correctness of the construction given to the Wilson act by the court below, and do not urge, in the event such construction be not sustained, that it was exempt for any reason whatever from liability." It was only the ruling made by the Supreme Court of this State first above quoted that was passed on and reversed by the Supreme Court of the United States. Its ruling in the Heymann case, therefore, does not cover the questions to be decided in this case.

It is provided by our statute, and it was also the common law, that in case of loss of goods entrusted to a common carrier for transportation, the presumption of law is against him, and no excuse avails him unless it was occasioned by the act of God or the public enemies of the State. This rule, however, is recognized by all the authorities as being subject to certain limitations. In *Savannah &c. R. Co.* v. *Wilcox*, 48 *Ga.* 432, 437, it was declared that the liability of a common carrier was at an end "if the owner of the goods himself receives them short of the place of destination, or if they are not delivered by the fault of the owner; or that they have been taken from the carrier by title paramount; and lastly, that they have been taken from him by legal process. He has not lost the goods; they have not been stolen or been destroyed; but his undertaking as a carrier has been determined." It has been held that where the property was taken from the carrier under a process in favor of a third person who claimed title thereto, proof of paramount title in such third person discharged the carrier from liability for failure to deliver to the consignee, whether or not the consignor or consignee had notice of such seizure. Robinson *v.* Memphis & C. R. Co., 16 Fed. 57; Hutchinson on Carriers, § 749; Van Zile on Bailments and Carriers (2d ed.), § 62. It is likewise true that a seizure of the property in the hands of the carrier by duly constituted authorities, under a valid process issued under a valid police law under which the property was liable to seizure, would

relieve the carrier from any liability for failure to deliver to the consignee. When property is seized under process valid on its face in favor of one claiming title thereto, the carrier is liable to the consignee for failure to deliver, unless he can show paramount title in such third person, or unless he can show notice of such seizure to the consignor. In the case of *Savannah &c. R. Co.* v. *Wilcox,* supra, it was held: "It is not the duty of a common carrier to keep his doors locked and to refuse entrance to a sheriff who comes to seize property in the possession of the carrier, if the sheriff have legal process. . . When goods delivered to a common carrier for transportation were seized by legal process and taken out of his possession by the sheriff, and the carrier forthwith gave notice to the consignor and consignee, and they made no reply and took no further notice of the proceedings: *Held,* that the carrier had a right to presume that they had abandoned the property, as subject to the legal process which had seized it." In the case of Robinson *v.* Memphis & C. R. Co., supra, it was ruled: "However the law may be elsewhere, the rule of the Supreme Court of the United States is that a seizure under legal process is a defense to the carrier in an action for non-delivery. But the mere seizure under valid process is not enough to excuse the carrier, for he must give immediate notice to the consignee; failing this, he becomes liable as in any other case of delivery to another person than his own bailee, and assumes the burden of showing that the party seizing the goods under the process has the paramount title, unless he can show that the consignee had actual knowledge from other sources in due time to be equivalent to that notice he would have received if the carrier had not been negligent in this regard."

In the present case, the shipments had arrived at destination and had been stored in the warehouse of the carrier. Notice of the Charleston shipments had been mailed to the consignees. The arrival of the Middendorf shipment was known to the consignee. The warrants under which the goods were seized were issued upon affidavits duly made before the proper officers, and the affidavit and the warrant conformed to the law under which the former was made and the latter was issued. The law provided for the storage of the property seized with the sheriff of the county for thirty days, within which any person claiming to own the same had a right to bring suit and recover. The consignors knew of the seizures; and

if they had brought suit within the thirty days named, they could have recovered the goods, if the seizure was unlawful because of the fact that the law under which the seizure was made was unconstitutional. The consignors did nothing except demand the value of the shipments from the Express Company. The seizures were made over the protest of the carrier, which "in no way brought about or connived at the seizures," and the goods were forcibly taken from it. The law provided that the police officers executing the warrant had authority to summon assistance for that purpose, and the agent of the express company, under the law, was liable to a fine for resisting the officers in the execution of the warrant. Conceding, without deciding, that the law under which the warrants were issued is unconstitutional, we think under the facts above recited, which appear in the petition, that the carrier had a right to presume that the consignors had abandoned the property as subject to the process which seized it, and that the carrier was not liable to them for its failure to do more than it did. In the case of Alabama & V. R. Co. *v.* Tirelli, 93 Miss. 797 (48 So. 962, 21 L. R. A. (N. S.) 731), it was held: "A carrier is not liable for failure to deliver to the consignee a carload of fruit which it is forbidden by the municipal authorities to deliver, where the police department is at hand to enforce the order, although the fruit was not within the operation of an ordinance quarantining against shipments from certain ports." In the concluding part of the opinion, after quoting from the decision of another court, it was said: "It is no answer to this language to say that no ordinance of the city prohibited the importation of bananas from Mobile. This is true; but the company is not bound to maintain an armed force to resist and overpower the marshaled hosts of the city police, acting under instructions from the executive department of the city government." In the present case, the law under which the warrants were issued and the seizure made became effective February 17, 1907, and we know of no decision of any court holding this particular law to be unconstitutional. In the case of McAlister *v.* Chicago &c. R. Co., 74 Mo. 351, the fifth headnote is as follows: "It seems that a bailee will not be held liable in damages for permitting the property of his bailor to be taken out of his custody upon a writ issued under a statute which is subsequently decided to be unconstitutional. He is not bound to know that it is un-

constitutional." The status of an unconstitutional law is ably discussed by Mr. Dowling in an article appearing in 55 Central Law Journal, 25, in the concluding part of which he advances very cogent reasons why the burden of determining whether or not a law is unconstitutional should not be imposed upon an officer executing judicial process based on such law. In 5 Cyc. 463, the following text is employed: "Where the carrier surrenders the goods under legal process, he should, to relieve himself from liability, at once notify the owner of the fact." In the case of American Express Co. *v.* Mullins, 212 U. S. 311 (29 Sup. Ct. 381, 53 L. ed. 525), it was ruled by the Supreme Court of the United States: "The duty of the carrier to safely carry and promptly deliver to the consignee the goods entrusted to it does not require it to forcibly resist judicial proceedings in the courts of the State into or through which the goods are carried. While the carrier may appear and contest the validity of a seizure under judicial process of goods in its custody, if it seasonably notify the owner and call upon him to defend, it is relieved from further responsibility; and, in the absence of fraud or connivance on its part, it may plead the judgment rendered against it as a bar in an action brought by the owner." On page 313, Justice Brewer said: "The company carried the goods [liquors] to Kansas in obedience to the terms of the shipment. On arrival in that State they were taken by judicial process out of its possession and destroyed, the process being issued in a proceeding in the nature of one in rem. Undoubtedly it was authorized to appear in the Kansas court and contest for the rightfulness of its possession, but it might also notify the owner of the property and call upon him to carry on the litigation." The proceedings in the case we are considering were in the nature of proceedings in rem. On the general subject of liability of a carrier in cases where shipments in his charge are seized under judicial process, see the following authorities: Stiles *v.* Davis, 1 Black, 101 (17 L. ed. 33) ; 4 Elliott on Railroads, §§ 1461, 1537; 1 Hutchinson on Carriers, § 327; 2 Id. § 738, et seq.; Moore on Carriers, §233 ; Van Zile on Bailments & Carriers (2d ed.) § 62 ; 5 Thompson on Negligence, §§ 6474, 6475; 6 Cyc. 462, 463 ; Ray on Neg. Imp. Duties, p. 928.

The court committed error in overruling the demurrer to the petition.            *Judgment reversed. All the Justices concur.*