LORENZO H. BROCKWAY *vs.* AMERICAN EXPRESS COMPANY.

Suffolk.    January 15, 1897. — May 18, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Carrier — Contract for Transportation of Animals — Limitation of Liability for Negligence — Lex Loci Contractus — Principal and Agent — Gross Negligence — Action.*

A contract of carriage made in another State, to be performed in part there and in part in other States, and providing that the carrier is not to be liable for any injury or damage to the property, even if caused "from any fault, negligence, or carelessness, gross or otherwise," of itself or its servants or agents, is governed by the law of the State where made, and, if such provision is invalid there, it cannot be availed of in defence to an action on the contract here for injury caused by gross negligence on the part of the carrier or its servants or agents.

If horses, which an express company contracts with the owner to transport upon railroads from one State to another, are kept in the car without food, drink, and rest for forty-nine hours, in violation of U. S. Rev. Sts. §§ 4386–4390, the railroad corporation and the company's agent, who knows that the car is being delayed for several hours at an intermediate point, and is requested by the custodian of the horses to unload them for feed and water, are guilty of gross negligence, for the consequences of which the express company is liable in an action by the owner.

CONTRACT, with a count in tort, for damage caused by the defendant's negligence in the transportation of the plaintiff's horses from Chicago to Boston. Trial in the Superior Court, before *Sheldon,* J., who directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The facts sufficiently appear in the opinion.

*A. N. Williams,* for the plaintiff.

*W. C. Loring,* for the defendant.

KNOWLTON, J.  The defendant entered into a contract with the plaintiff to transport twenty-eight horses from Chicago to Boston.  The plaintiff contends that the defendant was guilty of gross negligence in keeping the horses confined for a long time without food or drink, whereby they suffered greatly and were seriously injured.  The defendant's first contention is, that by the terms of the contract of carriage it was not to be liable for any injury or damage to the property, even if caused "from any fault, negligence, or carelessness, gross or otherwise," of itself or its servants or agents.

The first question is whether this provision of the contract is valid.  The contract was made in Illinois, to be performed in part in that State and in part in other States.  The rights of the parties to such a contract are to be determined by the *lex loci contractus*.  *Fonseca* v. *Cunard Steamship Co.* 153 Mass. 553.  *Fairchild* v. *Philadelphia, Wilmington, & Baltimore Railroad*, 148 Penn. St. 527.  *Hazel* v. *Chicago, Milwaukee, & St. Paul Railway*, 82 Iowa, 477.  The law of the State of Illinois was put in evidence, by which it appeared that in that State a common carrier cannot contract against liability arising from the gross or wilful misconduct of himself, his agents or employees. *Chicago & Northwestern Railway* v. *Chapman*, 133 Ill. 96.  The same doctrine is generally, although not universally, held in other jurisdictions.  *Doyle* v. *Fitchburg Railroad*, 166 Mass. 492, 496, and cases cited.  The defendant is a common carrier.  *Buckland* v. *Adams Express Co.* 97 Mass. 124.  *Bank of Kentucky* v. *Adams Express Co.* 93 U. S. 174.  It follows that this defence cannot prevail if there was gross negligence on the part of the defendant or its servants or agents.

The plaintiff relies in part upon U. S. Rev. Sts. §§ 4386 to 4390 inclusive, which punish by severe penalties the keeping of cattle, sheep, swine, or other animals for more than twenty-eight hours continuously in cars, boats, or vessels used in carrying or transporting them from one State to another, without unloading them for rest, water, and feeding for a period of at least five consecutive hours, unless prevented from so unloading them by storm or other accidental causes, or unless the cars, boats, or vessels are so constructed and arranged that the animals can have proper feed, water, space, and opportunity to

rest without being unloaded. The contract between the plaintiff and the defendant contemplated the carrying of the horses from one State to another by railroad companies, which were to be the defendant's agents, to which the provisions of the statute above referred to expressly apply. The horses were kept in the car without food or drink and without rest except what they could get standing for about forty-nine hours. The statute does not in terms apply to express companies hiring their accommodations from railroad companies; but there is no doubt that it applies to the railroad companies themselves which the defendant employed in the present case. The statute is intended to prevent cruelty in interstate commerce, as well as danger to the public health, from inducing diseases in animals which are to be used for food. The existence of this statute, even though it does not subject the defendant itself to a penalty, is strong evidence of the defendant's duty to give a reasonable opportunity to the plaintiff's custodian, who accompanied the horses on the train, to provide them with food and drink on their journey. Indeed, if there were no such statute, a contract to convey horses to be accompanied by a custodian would impliedly include an undertaking to allow the custodian to stop at reasonably convenient times and places to give them such food and drink as they needed to keep them in good health. Not to permit the giving of such food and drink would be gross negligence. So it has been held under the statute above cited, as well as at common law. *Chesapeake & Ohio Railway* v. *American Exchange Bank*, 92 Va. 495. *Nashville, Chattanooga, & St. Louis Railway* v. *Heggie*, 86 Ga. 210. *Smith* v. *Michigan Central Railroad*, 100 Mich. 148. *Illinois Central Railroad* v. *Adams*, 42 Ill. 474. *Toledo, Wabash, & Western Railway* v. *Hamilton*, 76 Ill. 393. *Dunn* v. *Hannibal & St. Joseph Railroad*, 68 Mo. 268. *Lowenstein* v. *Wabash Railroad*, 63 Mo. App. 68.

It is contended by the defendant, that the plaintiff, by his previous course of dealing with it, and by his knowledge of the custom of the company to bring horses from Chicago to Boston without stopping to feed them, impliedly agreed that these horses might be so brought. But if we give to the evidence the full effect that can reasonably be claimed for it, it falls short of showing that the horses were to be kept on the car

without feeding if the express company failed to bring the car through on close connections by the usual trains. The evidence shows that the car was delayed in Buffalo by the refusal of a railroad company to take it on the train by which it was expected to go, and that, on this account, it lost its connections, and the horses were kept confined about eight hours longer than the usual time for the trip. It certainly could not have been expected that the horses were to be left to starve if the car was delayed by a failure to make connections, or by a refusal of a railroad company to take it at the usual time.

There was evidence that the plaintiff had made arrangements to have horses watered and fed from time to time at the stock yards at East Buffalo and at Rotterdam Junction. There was also testimony that the custodian of the horses asked the agent of the defendant at Buffalo to have the horses watered and fed. It does not appear that he went much into particulars as to how or where the watering and feeding should be done. But the agent knew that the car was being delayed, and he may be presumed to have known that the horses had been on the car nearly a day before arriving at Buffalo, and that it would take another day for them to reach their destination. They could not be taken from the car without moving it, and it was the agent's duty, on receiving the request, to have the car taken to a place where they could be unloaded. Under the statute above referred to, it was the duty of the railroad company to unload, and feed, and water them without a request from their custodian if he failed to do it. Apart from the statute, it was the agent's duty, on a slight suggestion from the custodian, to put the car in a proper place for unloading, where the horses could be fed. We think there was evidence from which the jury might have found that the railroad company and the defendant's agent were guilty of gross negligence in this respect, for the consequences of which the defendant is liable.

*Exceptions sustained.*