CASE 91—ACTION BY FRANK EBLIN AND OTHERS AGAINST THE ILLI-
NOIS CENTRAL RAILWAY COMPANY TO RECOVER DAMAGES IN TRANS-
PORTING TWO CARLOADS OF HORSES.—FEB. 11.

# Illinois Central Ry. Co. v. Eblin and Others.

APPEAL FROM HENDERSON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.   AFFIRMED.

CARRIERS—LIVE STOCK SHIPMENT—FACILITIES FOR FEEDING AND WA-
TERING—OWNER   ACCOMPANYING—LIABILITY   OF   CARRIER—EVI-
DENCE.

Held:   1. In an action by a shipper of horses against the carrier
for damages to the animals from the length of time they were
on the cars without feed and water, and from failure to fur-
nish proper facilities for feeding and watering them, state-
ments of defendant's agents at the shipping point, made as an
inducement to ship over their line, as to what facilities de-
fendant would furnish for watering and feeding the stock while
en route, and what time would be required for the journey, are
competent testimony, they not tending to vary the contract ot
alter the terms of the bill of lading.
2. Though the shipper of stock agrees to accompany and feed and
water it, the carrier is liable for damage thereto from failure
to furnish proper facilities for feeding and watering.   .

S. B & R. D. VANCE, LOCKETT & LOCKETT AND PIRTLE & TRA-
BUE, FOR APPELLANT.

## QUESTIONS DISCUSSED.

1. Where the contract for shipment of horses over a railroad
is reduced to writing, parol evidence as to the statements of the
agent of the railroad company, made at the time the contract
was made, is not admissible to contradict or vary the terms
of said contract.
2. Where a shipper agrees with the railroad company to feed,
water and take care of his stock at his own expense and risk;

Vol. 114—52

while it may be the . duty of the railroad to furnish facilities (a place) to feed, water and take care of said stock, if the railroad fails to furnish such facilities, it is the duty of the shipper to make some effort to obtain the requisite facilities and if he fails to do so, and his stock suffers thereby, he is not entitled to recover any damages therefor of said railroad company on account thereof, and a peremptory instruction in favor of railroad company should be given.

3. The burden is upon the shipper to show that he tried to obtain. the proper facilities for feeding and watering stock at stopping place or that the same could not be had.

4. When a railroad fails to furnish facilities for feeding and watering horses at a stopping station when shipper has charge of stock it is the duty of the shipper to obtain same and the criterion of damages is the reasonable costs of such facilities.

5. When shipper agrees that the railroad shall not be liable for any injury that horses may do each other (gross negligence of railroad excepted), and 'the horses are unloaded at a station for the purpose of being fed, watered and rested, if the shipper reloads his stock without having fed, watered or rested same, or made some effort to procure facilities for feeding, watering and resting stock, if the same are not furnished by the railroad and, especially if the shipper knows by experience that the stock will injure each other, if not fed and watered, the shipper is guilty of contributory negligence and not entitled to recover for any injury the stock may do each other by reason thereof.

6. The verdict is contrary to the law and evidence.

7. The damages are excessive and must have been awarded by .passion and prejudice.

### AUTHORITIES CITED.

2 Greenleaf, 15th ed., vol 1, sec. 275 and notes; 2 Greenleaf, 15th ed., vol 1, sec. 87; Am. & Eng. Ency. of Law, vol. 8, p. 604.

YEAMAN & YEAMAN AND A. O. STANLEY, FOR APPELLEES.

### QUESTIONS DISCUSSED AND AUTHORITIES CITED.

Common carriers can not limit their liability for damages done by their own negligence to property they have in charge for transportation. L. & N. Ry. Co. v. Owen, 93 Ky., p. 203;

Illinois Central Ry. Co. v. Eblin and Others.

Rhodes v. L. & N. Ry. Co. 9 Bush, p. 688; Baughman v. L. & N. Ry. Co. 94 Ky., 150; L. & N. Ry. Co. v. Brownlee, 14 Bush, 600; Hart v. Pennsylvania Ry. Co., 113 U. S., p. 331; Elliott on Railroads, vol. 4, secs. 1511, 1557; Sunderland on Damages, vol. 3, sec. 904; 9 Ky. Law Rep., 814; L. & N. Ry. Co. v. Hawley, 10 Rep., 117; Harmon & Crockett v. Norfolk R. R. Co., 295 and 296; Clark v. Rochester & L. R. R. Co., 67, Am. Dec., 205.

It is the duty of common carriers of stock to provide proper facilities for resting, feeding and watering same while in transit, and a failure to provide such facilities is negligence.    Elliott on Railroads, vol. 4, secs. 1552, 1553; White v. Cincinnati, &c. Ry. Co., 89 Ky., 478; Owen & McKinney v. L. & N. Ry. Co., 93 Ky., 626; Harmon & Crockett v. Norfolk and W. R. R. Co., 44 L. R. A., 290; Walker, &c. v. Keenan, 34 U. S. App., 691, 73 Fed. Rep., 759; Gulf C. & F. R. R. Co. v. York, 2 Texas App. Civ. Case P., 813, p. 718; The Mo. P. & R. R. Co. v. Ivy, 79 Tex., 444; Covington Stock Yards Co. v. Keith, 139 U. S., 128; McCullough v. Wabash Western Ry. Co., 34 Mo. App., 23; Mason v. Mo. Ry. Co., 25 Mo. App., 473; Cooke v. Kansas City Ft. S. & M. R. R. Co., 57 Mo., App., 471; Kansas P. R. R. Co. v. Reynolds, 8 Kansas, 623.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

This is an appeal from a judgment of the Henderson circuit court in an action instituted by the appellees, Frank Eblin, etc., against the Illinois Central Railroad Company, for damages alleged to have been done to two car loads of horses while being transported over the defendant's line of road from Omaha, Neb., to Henderson, Ky.  As their cause of action the plaintiffs allege in their petition that at the time of making the contract for the shipment of their horses the defendant, through its authorized agents, agreed to deliver the horses at Decatur, Ill., in not less than 32 hours after leaving Omaha; and that they would furnish at that point ample opportunity for unloading, feeding and watering the horses; and that the horses should remain at Decatur not less than 12 hours, in the pens of the com-

pany, for feeding, watering, and resting; and that there-
after they would be transferred to Henderson, Ky., in not
less than 24 hours after leaving Decatur; and that the de-
fendants failed to perform their agreement to deliver the
horses at Decatur in 32 hours, and also failed to furnish
sufficient means for feeding and watering them at that
point, or to afford facilities for their remaining at that
point 12 hours; and that they also failed to transport them
to Henderson within 24 hours after leaving Decatur; and
that by reason of this breach of contract on the part of the
defendant their horses were kept in the cars between Oma-
ha and Decatur for 46 hours without food or water or rest,
and, after leaving Decatur, were kept for more than 30
hours without food, water or rest; and that by reason of
this treatment on the part of the defendant their horses
were famished and starved to such an extent that they lost
flesh rapidly, and in their extreme hunger and thirst de-
voured their manes and tails; and that when they landed
in Henderson they presented a gaunt and famished condi-
tion which materially depreciated their usefulness and sal-
able value; that two of them died on the road; and alto-
gether they were damaged in at least the sum of $600. The
railway company, by way of answer, alleged that it was
expressly provided in the contract of shipment that the
cars containing the stock were to be in charge of the ship-
per or his agent while in transit; that the railroad com-
pany should not be liable for any injury the animals might
do to each other, or loss not resulting from the gross neg-
ligence of the railroad company; that the shipper should
at all times feed, water and take care of said stock at
his own expense and risk; that the railroad company should
not be liable for damages resulting from the delay of trains.

unless the same was caused by their gross negligence, and put in issue all the affirmative allegations of the petition for relief tending to show a breach of the contract of shipment. The issues were made up by reply and rejoinder, and a trial before a petit jury resulted in a verdict for plaintiff for $600, and the defendant appeals.

The chief grounds relied on for reversal are that the trial court erred in admitting evidence of the statements of the agent of defendant at Omaha as to what the company would do in the way of furnishing facilities for watering and feeding the stock while en route, and the time that would be required for the journey; and that the verdict is flagrantly against the weight of evidence, and contrary to the instructions. The testimony for the plaintiffs is to the effect that the horses were shipped from Baker City, Or., to Omaha, Neb., a distance of about 1,700 miles, in eight days; that during the journey they were stopped and unloaded three times, and allowed to rest and feed each time about 24 hours; that they arrived at Omaha in good condition; that the agent of the defendant company at Omaha represented to the plaintiffs that they would deliver the cars in Decatur, Ill., in 32 hours, where abundant facilities for feeding and watering them would be furnished, and where they would be allowed to remain in the pens for rest and exercise, after being unloaded, 12 hours, and would then reach their destination at Henderson, Ky., in 24 hours after leaving Decatur; that as a matter of fact the horses left Omaha at 11:30 Tuesday night, and arrived at Decatur at 9:30 p. m., Thursday, having been on the road about 46 hours; that when they arrived at Decatur they were directed by the agents of the company to unload their stock in a lot about 35 feet square, which contained no mangers

or water troughs; that, although they had ordered 600 pounds of hay before they got to Decatur, the company only furnished about 150 pounds, which was scattered around the edges of the lot; that the only facilities for watering the horses were two washing tubs; that the water was carried in two buckets from an engine, and poured into the tubs; that the horses soon broke down one of the tubs, also one side of the pen fence, compelling them to remain to prevent their escape; that only a part of the horses got any water at all; that the lot was so crowded that many of them got no hay; that, after remaining in Decatur about 4 hours, they were directed to load their horses; that they left Decatur at 1:30 a. m. on Friday morning, and arrived at Henderson at 7:30 on Sunday morning; that when they arrived at Henderson two of the horses were dead, and that all were poor, gaunt, and famished, and had eaten off each other's manes and tails. The testimony for the plaintiff also fixes the depreciation in their value at from $10 to $20 per head, whilst the testimony of the defendant is to the effect that plaintiffs were notified at the time they shipped their horses that the schedule time between Council Bluffs and Evansville, Ind., a point in transit to Henderson, was 61 hours; and that they were also informed that they could feed and water at Decatur, Ill., that being about half the distance; and that this was satisfactory to the plaintiffs. The testimony of their employes at Decatur is to the effect that the horses were given 600 pounds of hay, and all the water needed; and that plaintiffs were given the privilege of remaining at that point for 24 hours, if they desired. But it is perfectly apparent, even from the testimony of the defendant, that the lot into which the horses were turned at Decatur was wholly insufficient; and that there were really

no facilities for taking care of stock at that point. We are of the opinion that the statements and representations made to the plaintiffs by the agents of the defendant at Omaha as an inducement to ship over their line was competent testimony, as it did not tend to vary the contract, or alter the terms of the bill of lading. It is not denied that the horses were on the car in transit between Omaha and Decatur about 46 hours without food or rest, and that they were more than 30 hours in transit from Decatur to Henderson, without being fed or watered. The Revised Statutes of the United States provide as follows:

"Sec. 4386 [U. S. Comp. St. 1901, p. 2995]. No railroad company within the United States whose road forms any part of a line or road over which cattle, sheep, swine, or other animals are conveyed from one State to another, or the owners or masters of steam, sailing or other vessels carrying or transporting of cattle, sheep, swine or other animals from one State to another, shall confine the same in cars, boats or vessels of any description, for a longer period than twenty-eight consecutive hours, without unloading the same for rest, water, and feeding, for a period of at least five consecutive hours, unless prevented from so unloading by storm or other accidental causes. In estimating such confinement the time during which the animals have been confined without such rest on connecting roads from which they are received shall be included, it being the intent of this section to prohibit their continuous confinement beyond the period of twenty-eight hours, except upon contingencies hereinbefore stated.

"Sec. 4387 [U. S. Comp. St. 1901, p. 2996]. Animals so unloaded shall be properly fed and watered during such rest by the owner or person having the custody thereof, or in

case of his default in so doing, then by the railroad company or owners or masters of the boats or vessels transporting the same, at the expense of the owner or person in custody thereof; and such company, owners or masters shall in such cases have a lien upon such animals for food, care and custody furnished, and shall not be liable for any detention of such animals.

"Sec. 4388 [U. S. Comp. St. 1901, p. 2996]. Any company, owner or custodian of such animals who knowingly and willingly fails to comply with the provisions of the two preceding sections, shall for every such failure, be liable for and forfeit and pay a penalty of not less than one hundred nor more than five hundred dollars. But when animals are carried in cars, boats or other vessels in which they can and do have proper food, water, space and opportunity for rest, the provisions in regard to their being unloaded shall not apply.

"Sec. 4389 [U. S. Comp. St. 1901, p. 2997]. The penalty created by the preceding sections shall be recovered by civil action in the name of the United States, in the circuit or district court of the United States, holden within the district where the violation may have been committed, or the person or corporation resides or carries on its business; and it shall be the duty of the United States marshals, their deputies and subordinates to prosecute all violations which come to their notice or knowledge.'

This prohibition against the confinement of stock transported for more than 28 consecutive hours without unloading for food and water and rest, and prescribing a penalty therefor, and for the recovery of damages, was intended to prevent cruelty to animals in interstate commerce, as well as danger to the public from diseases in animals which are to be used for food. See Brockway v. The American

Illinois Central Ry. Co. v. Eblin and Others.

Express Co., 168 Mass., 259, 47 N. E., 87. So rigorously has the statute been enforced in some jurisdictions, that the fact that the stockyards of the railroad company at a station were on fire when the train arrived is not held a sufficient excuse for not furnishing to a person in charge of the animals being transported thereon proper facilities for unloading them for food, rest and water, and for not stopping the cars for five hours, in accordance with the provisions of the act. See N. C. & St. L. R. R. Co. v. Heggie, 86 Ga., 210 (12 S. E., 363, 22 Am. St. Rep., 453). And a carrier will not be relieved from liability for a violation of the statute by the mere fact that a special contract existed, under which the shipper assumed the duty of feeding such stock, unless the railroad company in fact furnished the necessary facilities to enable the shipper to do so, as the negligence belongs to that class against which a common carrier is not permitted to contract. See C. & O. R. R. Co. v. The American Exchange Bank, etc., 92 Va., 495 (23 S. E., 935, 44 L. R. A., 449), and Comer v. Columbia, N. & L. R. R. Co., 52 S. C., 36 (29 S. E., 637). In the Virginia case it was held that, while the penal features of the federal statute could not be enforced in a State court, this did not prevent any who had been specially injured by its violation from recovering damages therefor; and in support of their conclusion cite Cooley on Torts (1st Ed.), 654; Shearman and Redfield on Negligence, section 3; Dennick v. Central R. R. Co., 103 U. S., 11 (26 L. Ed., 439); N. C. & St. L. R. R. Co. v. Heggie, 86 Ga., 210 (12 S. E., 363, 22 Am. St. Rep., 453); Grey v. Mobile Trade Co., 55 Ala, 387 (28 Am. Rep., 729), and numerous other authorities. The common-law rule on this subject is stated by Mr. Ray in his work on Imposed Duties in these words: "The carrier is liable for injuries to stock delivered it for transportation arising from a fail-

ure to furnish proper facilities for feeding and watering them, though the shipper has agreed to accompany his stock, and feed and water them at his own risk." Hutchinson on Carriers, 222a, and Wood on Railroads (Minor), section 452b, are to the same effect.

Whilst we entertain no doubt that a civil action for damages for injuries resulting from a violation of the federal statute by a railroad can be maintained in a State court, plaintiffs have not sought to do so in this proceeding. On the contrary, they admit in their petition that they consented to a 32-hour run from Omaha to Decatur without stopping for water or food. And the statute is only considered in this proceeding as evidence upon the question of defendant's negligence in keeping the horses in transit for 46 hours between Omaha and Decatur, and 30 hours between Decatur and Henderson, and in failing to provide suitable and convenient facilities for feeding and watering them while at Decatur. There is no conflict in the proof that the horses were in good condition when they started from Omaha, or that they were in very bad condition when they arrived at Henderson; and that this was due to appellant's negligence is clear. The jury, under our system, are the sole judges of the weight and credibility of the testimony. Our duty is performed when we see that there is sufficient evidence to support their finding. We do not feel that we would be justified in disturbing the verdict on the ground that it was not supported by the proof, and appellant has failed to point out any error in the instructions in the case. In fact, they seem to state the law as favorably to appellant as the facts warrant.

Judgment affirmed.