GROOT et al. v. OREGON SHORT LINE R. CO. et al.

No. 1911.   Decided July 18, 1908 (96 Pac. 1019).

1. DEPOSITIONS—AUTHENTICATION—STATUTES.  A deposition of a witness was taken, on oral examination, in the presence of the attorneys for both parties present, to examine and cross-examine.  By stipulation the testimony was taken in shorthand by a stenographer, and by him transcribed.  The notary certified that the deposition "was by me carefully read to the witness, and corrected by him, and then subscribed by him in my presence." *Held*, that the certificate complied with Laws 1905, p. 39, c. 41, providing that the certificate of the officer taking the deposition shall show that it was taken in his presence, and was read to the witness, and corrected and subscribed by him, etc.

2. SAME—STATUTORY REQUIREMENTS— WAIVER.  Where the attorneys for the parties stipulated that the deposition of a witness should be taken in shorthand by a stenographer, and by him transcribed, and agreed that, after the testimony had been transcribed, the notary might sign the name for the witness, and transmit the same to the court, to be used as evidence, subject to objections which might be made if the witness were in court,

etc., Laws 1905, p. 39, c. 41, providing that the certificate of the officer taking a deposition must show that it was read to the witness and corrected and subscribed by him,, were waived.

3. SAME—OBJECTIONS TO AUTHENTICATION OF DEPOSITIONS—TIME TO MAKE. The objection to a deposition, based on the insufficiency of the authentication of the officer taking it, comes too late if not taken before trial.

4. SAME—MANNER OF MAKING. The objection to a deposition based on the insufficiency of the authentication of the officer taking it, should be made by motion to suppress.[1]

5. SAME. Laws 1905, p. 39, c. 41, providing a method for taking depositions on oral examination, and prescribing what the certificate of the officer taking the deposition shall contain, does not modify the rule that an objection to a deposition, based on the insufficiency of the authentication of the officer taking it, comes too late if not taken before trial, and that the objection should be made by motion to suppress.

6. CARRIERS—CARRIAGE OF LIVE STOCK—ACTIONS—COMPLAINT—EVIDENCE—ADMISSIBILITY. A complaint, against a carrier for negligence in transporting sheep, that the sheep shrunk in flesh and lost in weight, to the damage of the shipper, is sufficient to admit evidence of the effect excessive shrinkage had on the mutton for food, and the effect thereof on the market price of the sheep; the fact that the sheep unduly shrunk in flesh and lost in weight not being controverted.

7. SAME—OBLIGATION OF CARRIER. A carrier, accepting sheep for transportation from Idaho to Nebraska, must stop at reasonable intervals, and provide reasonable facilities for resting, feeding, and watering the sheep, and this duty is not discharged by stopping at places where there are no such facilities, or where neither food nor water is obtainable.

8. SAME. A carrier, accepting sheep for transportation from Idaho to Nebraska, must, on the shipper failing to feed and water the sheep, do so, though the shipper contracted to do so, and it has a claim on the sheep for any reasonable amount expended for food and care.

9. SAME. A carrier accepting sheep for transportation must transport the same with reasonable dispatch.

10. SAME. Where a carrier accepted sheep for transportation, and was unavoidably delayed, it was required to make reasonable efforts to carry the sheep to some point where reasonable facilities to feed existed, and where food and water were obtainable.

[1]American Publishing Company v. Mayne & Co., 9 Utah 318, 34 Pac. 247.

11. SAME— DELAY IN TRANSPORTATION — RECOVERY. In an action against a carrier for delay in transporting sheep, an allowance for food expended by the shipper, because of the delay, was proper.

12. TRIAL—DIRECTION OF VERDICT. Where, in an action in tort against the initial and connecting carriers for negligence in transporting sheep, there was no evidence that the cars provided by the initial company were not proper, or that any delay or injury occurred while the sheep were in its possession, the court did not err in directing the jury to find for the initial carrier.

13. TORTS—JOINT AND SEVERAL LIABILITY. One may sue in tort one or more of the joint tortfeasors, and he may, at any time before judgment, dismiss the action as to one, and proceed against the other alone; and, so long as he does not discharge any one joint tortfeasor without the consent of the other, neither can complain.

14. DISMISSAL AND NONSUIT—TORTS. The court, in an action against joint tortfeasors, may, with the consent of plaintiff, dismiss the action as to one defendant, and the co-defendant cannot complain thereof.

15. TRIAL—EVIDENCE — OBJECTIONS—SUFFICIENCY. It is ordinarily not the duty of the court, when a document is offered in evidence as a whole, which contains both proper and improper matter, to segregate the one from the other; but, as a general rule, such duty is imposed on the objecting party, and he must point out and direct his objection against the part that is not proper.

16. SAME. In an action on an assigned claim for a tort, defendant denied the assignment, and plaintiff offered in evidence the written assignment, which contained, not only stipulations assigning the claim, but also statements with respect to the amount thereof, and that the assignor considered the claim true and just. Defendant objected to the whole instrument, on the ground that the latter statement was improper. The court suggested that the writing be admitted simply as proof of the assignment, and that it need not be read to the jury. Defendant did not consent to the suggestion, and the court admitted the whole writing in evidence, with the exception of the statement that the claim was true and just. *Held*, that the court did not err; for, if defendant desired to avail himself of an objection to the whole instrument, he should have made a double objection, one to the part which was in fact improper, and the other to the instrument as a whole, and save his exceptions to the ruling of the court.[2]

[2]State v. Greene (Utah), 94 Pac. 987.

17. APPEAL AND ERROR—HARMLESS ERROR. Where, in an action on an assigned claim for a tort, the court, after defendant failed to adopt its suggestion that assignment should be admitted simply as proof of the assignment of the claim received in evidence the whole instrument which contained also statements of the amount of the loss, and that assignor considered the claim true and just, an instruction directing the jury to disregard all matters in the assignment, except the matter that the claim had been assigned, was sufficient.[3]

18. SAME. Where the jury could not find the facts otherwise than in favor of plaintiff, the error in admitting in evidence an assignment to plaintiff of the claim sued on, because it contained statements which were not proper evidence, was not prejudicial to defendant.

APPEAL from District Court, Second District; J. A. Howell, Judge.

Action by C. P. Groot and another, partners under the firm name of C. P. Groot & Son, against the Oregon Short Line Railroad Company and another. From a judgment for plaintiffs against defendant the Union Pacific Railroad Company, it appeals.

AFFIRMED.

P. L. Williams, Geo. A. Smith, Jno. G. Willis, and C. R. Hollingsworth for appellant.

Maginnis & Corn for respondents.

FRICK, J.

This is an action for damages, alleged to have been caused by the negligence of the defendants, as common carriers, in transporting twelve carloads of sheep from Soda Springs, Idaho, to Omaha, Nebraska. The complaint consisted of two causes of action, one for damages to seven carloads of lambs, ewes, and wethers belonging to plaintiffs, and the other for five car loads of lambs owned by one H. C. Gorton, who assigned his claim to the plaintiffs before the bringing of this action. The answers of the defendants were, in effect, gen-

---

[3] Loofbourow v. Utah Light & Power Co. (Utah), 94 Pac. 981.

eral denials. The evidence developed at the trial, which supported the allegations of the complaint, very briefly stated, tended to establish the following facts: That the sheep owned by plaintiffs were mutton sheep in good condition, consisting of nearly 2,800 head of lambs, 600 or 700 head of wethers, and about fifty head of ewes amounting to a little over 3,500 head in all. Mr. Gorton's sheep were likewise shown to have been in good condition for mutton, and were 1,300 or 1,400 in number; that the whole number of lambs and sheep were delivered to the defendant Oregon Short Line Railway Company, in the condition stated above, at Soda Springs, Idaho, and were there loaded into twelve cars to be transported to Chicago, Ill., for sale on the market. The train with the sheep departed from Soda Springs at about 6 o'clock p. m. on the 18th day of October, 1906. The sheep were delivered to and received by the Union Pacific Railroad Company, after having been transported from Soda Springs, Idaho, at Granger, Wyo., which place is 147 miles east of Soda Springs. The Union Pacific Railroad Company received these sheep at Granger, for the purpose of transporting them to their destination. It does not appear from the evidence at what time the sheep arrived at Granger, but it does appear that they arrived at Rawlins, Wyo., at about 2 o'clock a. m. on the 20th day of October following. Rawlins was the first stopping place to rest, feed, and water the sheep. The sheep could not be unloaded for that purpose, however, until about 6 o'clock on the morning of the 20th of October. It is further made to appear that the sheepyards at Rawlins were not in very good condition to feed the sheep, and that the lambs did not eat much food at that place. The time consumed between Soda Springs and Rawlins, up to the time the sheep were unloaded to be fed, was thirty-six hours, and the distance between the two points is 310 miles. The sheep were reloaded at Rawlins, and started east at about 7 o'clock of the evening of the 20th of October, and the next feeding point was at Sidney, Neb., which is 276 miles east of Rawlins. The train arrived at Sidney about noon on the 22d day of October, consuming about fifty-three hours

since leaving Rawlins. In making the run from Rawlins to Sidney the train was stopped for about seven hours at Cheyenne, and about three hours some distance west of Sidney. The feedyards at Sidney were cattle yards, not prepared for sheep, and the testimony discloses that the man in charge of the yards informed plaintiff that there was not sufficient room nor feed for the sheep. The watering troughs were constructed for cattle, and were too high for watering the sheep conveniently. A severe snowstorm started after the train had arrived at Sidney, and in feeding the sheep on the ground they did not get sufficient food, and plaintiffs could only obtain about two-thirds of the amount of hay required to feed, on the 22d of October. The storm continued during the day of the 23d, and the snow drifted and caused the sheep to be covered up in the feedyard and about two-hundred head were smothered, or died from other causes. On and after the 23d of October plaintiffs could obtain no food at Sidney for the sheep except some straw, which the testimony tended to show is unfit food for sheep, and that they will eat it only when starving. The sheep remained at Sidney in practically this condition until about 11 o'clock on the 25th of October, when they were reloaded and started east again, and arrived at Grand Island, Neb., at about noon of the 26th of October, where they were stopped for feeding for about twenty-four hours. The next run was from Grand Island to Valley, where the sheep were again fed, after which they were transported to Omaha, arriving there on the morning of the 31st of October, more than twelve days after leaving Soda Springs, and after going a distance of about 1,000 miles. The usual time consumed in making this run the testimony shows is from four to six days, including stoppage for rest and feed. In making the run ordinarily two stops for rest and feed have to be made of about twelve hours each. On this trip four stops were made in the manner above stated.

The testimony further shows that when the sheep left Soda Springs the average weight of the lambs was seventy-two pounds, that of the ewes about 115 pounds, and of the wethers about 105 pounds a head. When they arrived at

Omaha the average weight of the lambs was 61 1-2 pounds, of the ewes ninety-three pounds, and of the wethers eighty-nine pounds a head; that the normal shrinkage in shipping sheep of the kind in question, for the distance named, is from four to six pounds a head. It further appears that, owing to the delay in transportation, the sheep could not be carried to Chicago, but had to be marketed at Omaha, where plaintiff's lambs were sold for $3.83, the wethers for $4.88, and the ewes for $3.32 a head. The average price for Mr. Gorton's lambs was $3.15 a head. The evidence also tended to show that if the sheep had been transported with reasonable dispatch, and in the usual time required for the distance traveled, the snowstorm at Sidney would not have been encountered, and that there would have been adequate feed and accommodation for the sheep farther east, and that the price of mutton derived from sheep which had suffered excessive shrinkage was twenty-five cents less a hundred than for the mutton that would have been produced from sheep such as plaintiffs' would have been if they had been transported in the usual time, and had received proper feed and treatment while in transit; that plaintiffs were compelled to expend the sum of $204 for extra feed, which was required for the sheep by reason of the delay in transportation, and that the loss and damage to plaintiffs, caused by reason of the matters aforesaid, amounted, for both causes of action, with legal interest, to the sum of $4,536.28.

We remark here that the evidence of the experts, with respect to the effect that the excessive shrinkage of the sheep produced on the mutton for food, and as to the effect it had on the price, was admitted over the objections of the defendants. The defendants offered no evidence in their behalf, and when the plaintiffs rested, the court directed the jury to find for the defendant Oregon Short Line Railway Company, and submitted the case to the jury as against the defendant Union Pacific Railway Company only. The jury found for the plaintiffs, for the full amount stated above, against the Union Pacific Railway Company. The court entered judgment on this verdict, and said company appeals,

making the Oregon Short Line Railway Company a party in this court. The Union Pacific Railway Company will hereafter be designated as appellant where that company is referred to. Of the errors assigned we shall discuss only such as are deemed material.

The first alleged error relates to certain depositions which were offered by plaintiffs, and admitted over the objections of the defendants. The depositions were taken upon stipulations, pursuant to the provisions of chapter 41, Laws Utah 1905, p. 39, which provides a method for taking depositions, upon oral examination, of witnesses who are nonresidents of or are absent from the state. Subdivisions 3 and 4 of the act provide that the certificate of the officer taking the deposition must, among other things, substantially show:

"(3) That the deposition was written or taken in the presence of the officer certifying thereto, at the time and place specified in the notice. (4) That the deposition was read by or to the witness and corrected and subscribed by him in the presence of said officer."

One of the depositions objected to was taken before a notary public at Omaha, Nebraska, and the other at Chicago, Illinois, before a similar officer. Both of the depositions were taken upon oral examination, the attorneys for the respective parties being present to examine and cross-examine the witnesses. It was stipulated between the attorneys that the testimony of the witnesses should be taken in shorthand by a stenographer and by him transcribed in longhand, which was done. The contention of appellant's counsel is that the depositions were not admissible in evidence, because the officer taking the same did not certify, as required by the provisions of the statute above quoted, in that the certificate did not state that the depositions were read to or by the witnesses, and corrected by them, and thereafter subscribed in the presence of the officer taking the same. As to the deposition taken at Omaha, it was specially stipulated that after the testimony of the witness "has been transcribed, the said notary, W. C. Lambert, may sign the same for said witness, John Smith, and transmit the same to said court (the district court of

Weber county, Utah, to be used as evidence, as provided in the statute, and subject to all the objections, except the form of interrogatories, which might be made were the witness present in court to testify." The notary who took the deposition at Chicago certified that the deposition "was by me carefully read to the witness, and corrected by him, and then subscribed by him in my presence." The officer who took the deposition in Nebraska, with respect to this point, certified that the deposition "was subscribed by the witness in my presence, and was taken at the time and place as in the attached stipulation specified."

The statute above referred to simply requires that the certificate of the notary public shall substantially show the facts above quoted. It seems to us that, in view of the stipulations of the attorneys, and the facts certified to, there was a substantial compliance with the statute, except that in the Omaha deposition it did not appear that the deposition was either read by or to the witness, and that an opportunity was given him to make corrections. But we think that the reading of the deposition to or by the witness was substantially waived by the stipulation. If the reading by or to him was waived, the making of corrections was also waived, as an incident of waiving the reading. The statutory provision above referred to is not to be construed so as to prohibit a party from waiving any of the matters therein required. But in any event the objection to the depositions was not made until the trial had begun and was in progress. The objection, if it had been timely made, and if fatal, could have been obviated by the retaking of the deposition. Nor was the objection aimed at the competency of either the witness or the testimony, but was directed at a matter of authentication merely. The usual rule in this respect is that an objection of this character comes too late if not taken before trial. Such an objection should be made by motion to suppress the deposition. This court has so held in the case of *American Publishing Co. v. Mayne Co.*, 9 Utah 318, 34 Pac. 247. This holding is in accordance with the general rule upon the subject. (*Doane v. Glenn*, 21 Wall. [U. S.] 33, 22 L. Ed. 476;

Ency. Pl. & Pr. 591, 593.)   The statute above quoted from neither modifies nor obviates this general rule.   This objection, therefore, cannot be sustained.

Another objection is that the court erred in admitting the evidence relating to the effect the excessive shrinkage had upon the mutton for food, and the effect thereof upon the market price of the sheep.   This objection is based upon the contention that no such issue was presented by the complaint. The allegations of the complaint in this regard are that the sheep "shrunk in flesh and lost weight to the damage of these plaintiffs," etc. That the sheep did unduly shrink in flesh and lost in weight as we have shown, was not controverted, but it is insisted that the evidence with regard to the effect the shrinkage had upon the mutton for food, introduced an element into the case not pleaded.   We think otherwise.   The effect upon the mutton, if any, was a mere incident or result of the shrinkage.   If this shrinkage affected the value of the mutton, and consequently the price that could be obtained for the sheep in the market, it was a loss directly attributable to the excessive shrinkage which was caused by the delay and want of care of the sheep in transporting them to market. We think the allegations of the complaint were sufficient to admit the evidence, and further that the evidence upon this question was proper.

It is next urged that the court erred in admitting the evidence with regard to the scarcity of food, and the character thereof, that was obtainable, and the condition of the feedyards and country surrounding them along the way.   As to the first, it is said that it was not the duty of appellant to either provide food or water, or to feed the sheep, but that it was the duty of the plaintiffs to provide the one and do the other.   In this regard we are not informed what the terms of the shipping contract were, if any was entered into. The action, however, is one for a tort, and not for a breach of contract.   When the appellant accepted the sheep at Granger, Wyoming, for transportation for such a long distance, it became its duty to stop at reasonable intervals, and

to provide reasonable facilities for resting, feeding, and watering the sheep. To say that it discharged this duty if it stopped at any place or places along the route where there were no such facilities or where neither food nor water was obtainable, because it was incumbent upon the plaintiffs to pay for such food and to feed and water such sheep, is tantamount to saying that the duty imposed is merely a matter of form. If it was the duty of appellant to stop at reasonable intervals to rest, feed, and water the sheep, this duty was not discharged, unless appellant stopped at places where food and water were obtainable. It would be needless to impose such a duty if it were not for the purpose of feeding and watering the sheep that are being transported. They could not be fed nor watered without reasonable facilities to do so, nor unless food and water was obtainable. The appellant had it entirely within its power to arrange for stopping places, and to make them at points where both food and water were to be had. Moreover, this was an interstate shipment for which a federal statute imposed the duty upon appellant to stop at reasonable intervals to rest, feed, and water the sheep; and, although plaintiffs may have agreed to provide food and water at their own expense, and to feed and water the sheep, yet if, notwithstanding such an agreement, plaintiffs failed to provide food and water, and to feed and water the sheep, it was appellant's duty to do so. If there was such an agreement, or without it, appellant no doubt, would have had a claim upon the sheep for any reasonable amount expended for food and care.

It was also the duty of appellant to transport the sheep with reasonable dispatch, and not to unavoidably delay them in transportation. If an unavoidable delay was caused by something beyond the control of appellant, it nevertheless was its duty to make reasonable efforts to carry the sheep to some point where reasonable facilities to feed and where food and water were obtainable. The evidence in this case is to the effect that the delay was unusual and unreasonable; that the stops were made during the first 8 or 9 days, at places where the facilities to feed and water the sheep were inadequate,

and the food obtainable was insufficient, and at times unfit for them to eat. The appellant offered no explanation with regard to these things, and the only defense offered is that it was not the duty of appellant either to provide food or water, or to feed or water the sheep. This defense is one not admissible under the law, as the following cases clearly demonstrate: *Lowenstein & Thomas v. Wabash Ry. Co.,* 63 Mo. App. 68; *Ft. Worth & D. C. Ry. Co. v. Daggett,* 87 Tex. 322, 28 S. W. 525; *Gulf, C. & S. F. Ry. Co. v. Gann,* 8 Tex. Civ. App. 620, 28 S. W. 349; *Smith v. Railroad Co.,* 100 Mich. 148, 58 N. W. 651, 43 Am. St. Rep. 440; *Wabash, St. L. & P. Ry. Co. v. Pratt,* 15 Ill. App. 177; *Toledo W. & W. Ry. Co. v. Hamilton,* 76 Ill. 393; *Toledo W. & W. Ry. Co. v. Thompson,* 71 Ill. 434; *Brockway v. American Express Co.,* 168 Mass. 257, 47 N. E. 87; *Atchison, T. & S. F. Ry. Co. v. Allen,* 75 Kan. 190, 88 Pac. 966, 10 L. R. A. (N. S.) 576. Moreover, the court, in substance, instructed the jury that it was not the duty of the appellant to provide food for the sheep, nor to feed and water them, but that it was the duty of the plaintiffs to do this, but that it was the duty of appellant to provide reasonable facilities to feed and water, and to stop at such points as would afford plaintiffs a reasonable opportunity to obtain food and water for and to feed the sheep. While counsel took proper exceptions to these instructions, they did not assail them in their argument in this court, nor have they cited any authorities that such is not the law.

The contention that it was error to allow the item of $204 for extra food is likewise untenable. This extra food was required, for the sole reason that the transportation was unusually and avoidably delayed by the appellant. If this be so (and it was in no manner controverted nor explained by appellant), why should not plaintiffs recover back what they were required to expend because of the negligent delay in transportation? Nothing was allowed for feed for the time in which the trip was usually made. Allowance was made for the overtime merely. We are of the opinion that there

was no error committed in allowing for food required for the sheep during the excessive time.

The further contention is made that the court erred in directing the jury to find for the Oregon Short Line Railway Company. There is no claim that the cars provided by that company were not proper, nor any evidence that any delay or injury occurred while the sheep were in its charge. There was no evidence of negligence therefore, upon which a finding or judgment against that company could be based. Moreover, as we have pointed out, this is an action for tort. The plaintiffs, therefore, could sue any one or more of the joint tort-feasors, if there were, in fact, more than one. The plaintiffs could likewise, at any time before judgment, have dismissed the action as to one, and have proceeded against the other alone. The court could also dismiss the action, with the consent of the plaintiffs, as to one tort-feasor, and we know of no reason why the other can complain. Where any other rule is invoked, it applies only after judgment. A plaintiff need not prosecute all joint tort-feasors; and, as a general rule, so long as he does not release or discharge any one without the consent of the other, neither can complain.

Another alleged error assigned, and which arose during the progress of the trial, is as follows: The second cause of action is based upon an assigned claim, which was owned by one H. C. Gorton. The assignment of the claim was in writing, and, both the defendants having denied the assignment, the plaintiffs offered the writing in evidence at the trial. The writing contains certain statements with respect to the value of the sheep, the amount of the loss, and, further, that the assignor considered the claim "true and just." These statements were not proper to go before the jury as evidence. Appellant's counsel objected to the introduction of the whole writing, upon the ground that the statements above referred to were improper. The court suggested that the writing be admitted simply as proof of the assignment, and that it need not be read to the jury. Counsel for appellant did not consent to this suggestion, and the court then admitted the whole writing in evidence, with the exception of

the statement that the claim was "true and just," and announced that he would cover the matter by an instruction to the jury. The court did instruct the jury, in a special instruction, to disregard all matters in the written assignment, except the matter that the claim owned by Mr. Gorton was by him assigned and transferred to the plaintiffs. Appellant's counsel excepted to the ruling of the court in this behalf, and now insists that the court erred. While the statements of fact in the writing were not proper as evidence against either one of the defendants, that part constituting the assignment of the claim was proper. The whole trouble with counsels' claim is that they did not at the time point out and limit their objections to the vulnerable parts of the assignment. Had they done this, and the court had then ruled against them, they might be in a position to now urge the ruling as being erroneous. It is not ordinarily the duty of the court, when a document or paper is offered as a whole, which contains both proper and improper matter, to segregate the one from the other; but, as a general rule, such duty is imposed upon the objecting party, and he must point out and direct his objection against the part or parts that are not proper. In this case it would have been an easy matter for either court or counsel to segregate the proper from the improper matter, and to allow only that which was proper to go to the jury. In view, however, that counsel did not do this, the court was not obliged to do it, and therefore committed no prejudicial error in admitting the assignment in evidence. If under such circumstances an attorney desires to avail himself of an objection to the whole document, he must make a double objection, one to the part which is in fact improper, and the other to the instrument as a whole, and save his exceptions to the ruling of the court. The practice with regard to such an objection is discussed and applied in a case decided at this term, namely, *State v. Greene,* 33 Utah 497, 94 Pac. 987, and we shall do no more than to refer to that case.

We are also of the opinion that the instruction of the court with respect to the statements contained in the assignment was sufficient. This question, and the effect of such in-

structions, we have also passed upon at this term in the case of *Loofbourow v. Utah Light & Power Co.,* 33 Utah 480, 94 Pac. 981, and we shall not enlarge upon what is there said upon the subject. We remark, however, that in view of the whole evidence in this case, appellant could not in any possible way have been prejudiced by the statements contained in the assignment. The evidence at the trial which was not controverted by the defendants was such that, if the plaintiffs were entitled to recover as a matter of law, the jury could not have found the facts otherwise than they did. In no event, therefore, was there any prejudicial error with respect to this matter.

All the other assignments are substantially covered by what has been said, and no special discussion of any of them is deemed necessary.

The judgment is therefore affirmed, with costs to respondents.

McCARTY, C. J., and STRAUP, J., concur.