H. H. BANKS, Trustee in Bankruptcy of W. H. Leonard, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAIROAD COMPANY et al., Appellants.

Kansas City Court of Appeals, February 13, 1911.

1. CARRIERS: Contracts: Evidence: Contemporaneous Oral Agreement. In an action to recover damages on account of the alleged breach of a written contract for the transportation of horses from U. to S., where the horses shipped at U. did not make up a carload, but the shipper proposed to the carrier that the car be stopped at C. that he might add eleven other horses, it is error to submit to the jury the issue of whether an oral agreement, contemporaneous with the written contract, was made by the parties, when the written shipping contract contained the words, "Stop C. to fill."

2. ————: ————: ————: ————: The words of the stipula-
tion in the written contract, "Stop C. to fill" standing alone do
seem obscure, but considered in the light of their context, and
of the nature and circumstances of the transaction, their mean-
ing is clear and certain that a stop was to be made at C. to
enable the shipper to fill with other horses the partly loaded
car. Under the rule that where a stipulation of a written con-
tract is obscure in meaning, oral evidence is admissible for
the purpose of ascertaining the meaning intended, the words
of the stipulation cannot be construed to mean that a stop
should be made to enable the shipper to unload and feed for
two weeks.

3. ————: ————: ————: ————: The duty of a carrier to
exercise proper care for the preservation of live stock in
transportation should not be extended to compel a break in the
transportation for two weeks in order that the shipper may im-
prove, instead of merely preserve, the physical condition of
his property. Where such a privilege is not stipulated for in
the written contract, and that contract appears to cover the
whole transaction, the privilege cannot be established by proof
that it was the subject of a contemporaneous oral agreement.

Appeal from Boone Circuit Court.—*Hon. Nicholas D. Thurmond*, Judge.

REVERSED AND REMANDED.

*E. W. Hinton* for appellants.

(1)  The written and printed bill of lading pur-
ported to be a complete contract between the parties
for the transportation in question, and hence it was er-
ror to permit the plaintiff to add additional stipulations
for a two weeks stop, by parol evidence of prior negotia-
tions. Koons v. Car Co., 203 Mo. 227.; Boggs v. Laun-
dry Co., 171 Mo. 282; Blake v. Jaeger, 81 Mo. App.
239; Helm v. Railroad, 98 Mo. App. 419; Thompson
v. Libby, 34 Minn. 374, 26 N. W. 1; Violette v. Rice, 173
Mass. 82.   (2)  The alleged contract was illegal and
void because it granted the shipper a greater privilege
than that provided in the tariff schedules. Lyne v.
Railroad, 170 Fed. 847.   (3)  The written bill of lad-
ing, plus the parol additions, did not create a joint

liability and hence it was error to permit a joint recovery. McLendon v. Railroad, 119 Mo. App. 128; Meyers v. Railroad, 120 Mo. App. 288; Pipe Co. v. Railroad, 137 Mo. App. 479; Crockett v. Railroad, 126 S. W. 250. (4) Even by the aid of the parol evidence, the plaintiff failed to make out a several liability against either defendant because the C. B. & Q. Company did not undertake to carry beyond Moulton, Iowa. McLendon v. Railroad, 119 Mo. App. 128; Crockett v. Railroad, 126 S. W. 243. (5) The instruction as to the measure of damages was erroneous in allowing the jury to award the increased price for which the horses might have sold if they had been fattened for two weeks, because no such damage could have been contemplated in the absence of some notice to defendants that the horses needed feeding to fit them for market. Hadley v. Baxendale, 9 Exch. 341; Rogan v. Railroad, 51 Mo. App. 665; Abeles v. Telegraph Co., 37 Mo. App. 554; Wilson v. Russler, 91 Mo. App. 275.

*N. T. Gentry* for respondent.

(1) No error was committed by the trial court in permitting oral evidence to be introduced to prove that the appellants' agreed to stop the car at Centralia, Missouri and allow Mr. Leonard to feed, water and rest his fifteen horses, and then to load said horses, and eleven other horses, on said car. As a general proposition, parol evidence is not admissible to add to or to vary a written contract; but that rule has exceptions which are as old and as well established as the rule itself. Brown v. Bowen, 90 Mo. 189; Greening v. Steele, 122 Mo. 294; Van Meeter v. Pool, 110 S. W. 5; Lumber Co. v. Warner supra; Bonney v. Morrill, 57 Me. 368; Bashor v. Forbes, 36 Md. 154; 1 Greenl. on Ev., sec. 284a; 1 Elliott on Ev., secs. 577, 518; Underhill on Evidence, pp. 307, 308; Lawson on Contracts, secs. 378, 384; 1 Beach on Contracts, sec. 28; 9 Ency. of Evidence, p. 350; 9 Cyc.

of Law, pp. 587, 588; 2 Parsons on Contracts (7 Ed.), sec. 548. (2) A common carrier may contract to carry beyond its own line. It is well settled that where several common carriers each having its own line, associate and form what to the shipper is a continuous line, and contract to carry goods through for an agreed price which the shipper pays in one sum, and which the carriers divided among themselves, then they are jointly and severally liable to the shipper with whom they have contracted for a loss taking place on any part of the whole line. White Com. Co. v. Railroad, 87 Mo. App. 334; Sherwalter v. Railroad, 84 Mo. App. 589; Wyman v. Railroad, 4 Mo. App. 35; Harp v. Grand Era, 1 Woods (U. S. C. C.) 184; Railroad v. Wilkins, 44 Md. 11; Barton v. Wheeler, 49 N. H. 25; Quimby v. Vanderbilt, 17 N. Y. 306; Choteaux v. Leach, 18 Pa. St. 224; Steamboat Co. v. Brown, 54 Pa. St. 77; Hutchinson on Carriers, sec. 158. (3) Finally, it will be seen that the judgment in this case follows that line of decisions, which hold that a common carrier is liable for its failure to properly deliver freight entrusted to it. On that subject, an eminent author said, "Every delivery must be made to the right person, at a reasonable time, at the proper place, and in a proper manner." Hutchinson on Carriers, sec. 340; Bartlett v. Philadelphia, 32 Mo. 256; Tandy v. Railroad, 68 Mo. App. 431; Leavering v. Transportation Co., 42 Mo. 88; Story on Bailments (9 Ed.), secs. 543, 574.

JOHNSON, J.—This is an action to recover damages on account of the alleged breach of a contract of the defendant carriers for the transportation of a shipment of horses from Unionville, Missouri, to the stock yards at East St. Louis, Illinois.

W. H. Leonard, a dealer in horses, entered into a written contract with the Chicago, Burlington & Quincy Railroad Company on September 8, 1908, by the terms of which the company received and undertook to trans-

port fifteen horses from its station at Unionville, Mo., to Moulton, Iowa, and there deliver them to the Wabash Railroad Company for further transportation to East St. Louis. The horses did not make a carload but Leonard had other horses near Centralia, Missouri, a station on the Wabash road, and proposed to the company that the car be stopped at that point and that he might add eleven other horses to the shipment to make a carload.

Accordingly the agent wrote on the shipping contract the words, "Stop Centralia Mo. to fill" and added five dollars to the transportation charges for the privilege thus granted. Leonard intended to sell the horses on the market at East St. Louis and they were in poor condition for immediate sale owing to the fact that being grass fed only they were poor and shabby looking. His purpose was to unload them at Centralia, take them out to a farm where he had arranged for their reception and care, have them well fed for two weeks and then reship them on to market together with eleven other horses. Over the objections of the defendants plaintiff was permitted to introduce testimony tending to show that Leonard had an oral agreement with the agent of the carrier made at the time of the execution of the shipping contract that he should be permitted to cary out this plan and that the extra charge of five dollars was imposed for the privilege of stopping and unloading at Centralia and holding the horses there two weeks for feeding.

The Burlington Company carried the horses to Moulton, Ia., and there delivered them to the Wabash Company which carried them through to East St. Louis without stopping at Centralia. In consequence of this breach of the alleged oral contract the horses were prematurely forced on the market and, owing to their poor condition, were sold at a great sacrifice.

Leonard presented a claim to the Wabash Company for the damages resulting to him from the breach

of the oral contract. That company refused to recognize the validity of that agreement but stood on the written contract and offered to compensate Leonard for the damages he suffered on account of the breach of the stipulation to stop at Centralia to receive an addition to the load. The judgment before us is for plaintiff and is an expression of Leonard's theory of the nature and scope of his contractual relation to defendants. Before the trial Leonard became a bankrupt and the action is prosecuted by his trustee in bankruptcy as plaintiff.

The issues contested at the trial and argued in the brief's of counsel cover a wider field than we shall cover in the statement of facts and opinion. We think the learned trial judge erred in submitting to the jury the issue of whether or not an oral agreement contemporaneous with the written contract was made by the parties. When a written contract, on its face, purports to cover the entire transaction between the parties, the rule is elementary that all prior and contemporaneous parol negotiations and agreements are merged in the written contract and afterward cannot be employed by either party to enlarge, alter or modify the terms of the written contract.

Counsel for plaintiff acknowledge this rule but seek to avoid its application on two grounds, viz., first, that the stipulation in the written contract "Stop Centralia Mo. to fill" is an obscure expression of the agreement intended to be expressed which justifies the introduction of explanatory parol evidence and, second, aside from that stipulation the written contract omits to make any provision for feeding and watering during the transportation from Unionville to East St. Louis and, consequently, is incomplete on its face and may be pieced out by the oral contract.

The first of these propositions invokes the well-settled rule that where a stipulation of a written contract is obscure in meaning, oral evidence is admissible for

the purpose of ascertaining the meaning intended to be expressed by the language employed. As is said by the Supreme Court in Edwards v. Smith, 63 Mo. 119: "A contract . . . may be obscurely expressed, and a knowledge of the relation of the parties, their antecedent acts, and the subject matter of the contract, may enable a court clearly to understand what otherwise would be ambiguous or obscure." But "that rule never applies except in cases where the part of the contract which is reduced to writing shows upon its face that it is incomplete and that it does not purport to be a complete expression of the entire contract." [Koons v. Car Co., 203 Mo. 1. c. 255.] Certainly obscurity in the meaning of a stipulation does not give either party the right to inject into the contract a prior contemporaneous oral agreemet as a substitute for the questionable stipulation. To hold otherwise would be to accord to the party offering the parol agreement the right to alter or vary the terms of his written contract. Evidence may be received *to explain* but not to contradict or vary that which may be obscure.

The words "Stop Centralia Mo. to fill" standing alone do seem obscure but considered in the light of their context and of the nature and circumstances of the transaction their meaning is clear and certain. They mean that a stop was to be made at Centralia to enable plaintiff to fill with other horses the partly loaded car. No other reasonable meaning can be accorded the words and the argument that they might be construed to mean that a stop should be made to enable the shipper to unload and feed for two weeks is based on an unnatural and strained construction of what is very plain and simple language. The written contract covered the subject of stopping at Centralia and did not contemplate that the stop should be made for the time and purpose contended for by plaintiff. To permit plaintiff to recover on the oral agreement would be to permit him to abrogate an important stipulation of the written contract and to

substitute therefor an agreement neither the shipper nor the carrier intended to express.

Passing to the second proposition we find in the contract the provision: "Said animals are to be loaded, unloaded, watered and fed by the owner or his agents in charge." There is no mention of the place where a stop shall be made to feed and water. We shall concede, for argument, that, in the transportation of horses from Unionville to St. Louis, proper care of the animals requires that a stop for food and water be made en route and that Centralia was the customary and convenient stopping place. Further we admit, *arguendo*, that when a shipping contract is silent on the subject of where such stop shall be made, evidence of an oral agreement to stop at a certain station is admissible under the rule that "where the instrument of writing does not purport to cover the entire agreement, or a part only of the contract is reduced to writing, then the matter thus left out may be supplied by parol evidence." [Lowenstein v. Railway, 63 Mo. App. 68.]

But these concessions do not aid plaintiff. We are not dealing with a case where the shipper complains of the failure of the carrier to afford him an opportunity to minister to the necessary physical wants of live stock during the course of its transportation, but to a cause of action based on the breach of an alleged agreement to stop the transportation for a long period in order that the shipper might be enabled to improve the condition of his stock and make it more suitable for the market by a course of feeding and attention.

We do not think the duty of the carrier to exercise proper care for the preservation of live stock in transportation—whether such duty be found in the stipulation of the shipping contract or rests wholly on rules of the common law—should be extended to compel a break in the transportation for a period of two weeks in order that the shipper may improve, instead of merely preserve, the physical condition of his property. The

right of the shipper to such privilege must be expressed in his contract with the carrier and where it is not stipulated for in the written contract and that contract appears to cover the whole transaction, 'the privilege cannot be established by proof that it was the subject of a contemporaneous oral agreement.

The judgment is reversed and the cause remanded. All concur.