S. F. CONLEY, Admr. of the Estate of WILLIAM H. LEONARD, deceased, Respondent, v. CHICAGO, BURLINGTON & QUINCY R. R. CO., and THE WABASH RAILWAY COMPANY, Defendants; CHICAGO, BURLINGTON & QUINCY R. R. CO., Appellant.

**Kansas City Court of Appeals, February 21, 1916.**

1. **DAMAGES: Railroad: Interstate Shipments.** The plaintiff sued to recover damages from defendants for a breach of contract in transporting a carload of horses from Unionville, Missouri, to East St. Louis, Illinois. The Burlington Company was the initial carrier and delivered the horses in good order to the defendant Wabash Company, which completed the transportation. The Burlington Company agreed, in writing, inserted in the bill of lading, to stop the shipment at a certain point on the Wabash Railroad and to allow plaintiff to load more horses. The Wabash Company failed to make the agreed stop. *Held*, that plaintiff had a right to join the two carriers as defendant in the one action, the cause of action against each being the same; to-wit, the negligent breach of the shipping contract.

2. ———: ———. When a commodity has been delivered to a common carrier to be transported on a continuous voyage or trip, to a point beyond the limits of the state where delivered, the character of interstate or foreign commerce attaches thereto, and it is immaterial whether the shipment be made on a through bill of lading or upon a bill or bills issued for transportation between intrastate points.

3. ———: ———: ———. An initial carrier, which is liable to a party for any loss caused by that carrier or its connecting carrier, may have recourse against the latter in another action, if it is compelled to compensate plaintiff in damages for a loss caused by the negligence of the latter.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris*, Judge.

AFFIRMED.

*N. T. Gentry* for respondent.

*E. W. Hinton* and *McBaine & Clark* for appellant.

JOHNSON, J.—This suit was instituted in the circuit court of Boone county by W. H. Leonard, to recover damages for the breach of a contract for the transportation of a carload of horses from Unionville, Missouri, via Moulton, Iowa, to the National Stock Yards at East St. Louis, Illinois. The defendant, the Burlington Company, was the initial carrier which issued the contract, carried the horses shipped from Unionville, thereunder, to Moulton, Iowa, and there delivered them in good order to the defendant, Wabash Company, which completed the transportation to the National Stock Yards at East St. Louis. The Burlington Company at the request of Leonard, the shipper, wrote into the contract "stop at Centralia to fill" which meant that the Wabash Company should stop the car at Centralia, a station on its line and give Leonard a reasonable opportunity to load eleven horses he was holding at that station for shipment to East St. Louis, and for which there was room in the car. An additional charge was made for this stopover privilege. The Wabash Company negligently failed to stop the car at Centralia and this suit is prosecuted against both carriers for compensation for the resulting loss.

Before it was tried Leonard was adjudged a bankrupt and the cause was revived and continued in the name of H. H. Banks, his trustee in bankruptcy. He recovered a judgment in the circuit court against both defendants but on their appeal we reversed the judgment and remanded the cause for error in the admission of certain oral evidence which tended to vary the terms of the shipping contract. [Banks v. Ry., 153 Mo. App. 469.]

The bankruptcy proceedings were terminated and the cause reverted to Leonard, the shipper, who afterwards died and it was revived in the name of S. F. Conley, the administrator of his estate. At a subsequent trial the court sustained the Burlington Company's demurrer to the evidence but submitted the case as to the Wabash. The jury returned a verdict for the Burlington but against the Wabash for $500. The court sustained the latter Company's motion for a new trial and also plaintiff's motion for a new trial from the judgment exonerating the Burlington. Plaintiff took no appeal from the order granting the Wabash a new trial, but the Burlington appealed from the order sustaining plaintiff's motion.

The petition clearly pleads a cause of action for breach of a through contract of affreightment from Unionville, Missouri, to East St. Louis, Illinois, and though it contained no express allegation that the cause was based upon the national laws relating to interstate shipments, and throughout the trial plaintiff appeared to be asserting a cause under the State laws predicated upon a joint contract of affreightment, the petition pleaded all the terms of the contract and the facts relating to the transportaion which disclose beyond question, as does the evidence, that the subject-matter of the cause was the breach of an interstate contract for transportation from Unionville, Missouri, to East S. Louis, Illinois.

We have not overlooked the provision in the shipping contract that the Burlington was to carry the horses only from Unionville to Moulton, Iowa, and there deliver them to the Wabash for further transportation to East St. Louis, but apart from other provisions and recitals which show that through transportation was intended, the very fact that the initial carrier received the horses for continuous transportation to East St. Louis, subject only to a stop-over privilege at Centralia, impressed upon the shipping

contract the character of a through contract providing for interstate transportation. As we held in Bailey v. Railroad, 184 Mo. App. 457: "The rule may be considered as firmly established that when a commodity has been delivered to a common carrier to be transported on a continuous voyage or trip to a point beyond the limits of the State where delivered, the character of interstate or foreign commerce attaches thereto, and it is immaterial whether the shipment be made on a through bill of lading or upon a bill or bills issued for transportation between interstate points. [Terminal Co. v. Interstate Commerce Commission, 219 U. S. 527; Commission Co. v. Worthington, 225 U. S. 108; State v. Railway, 71 S. W. (Tex.) 994; Railway v Grain Co., 73 S. W (Tex) 845; Railway Com. v. Railroad, 229 U. S. 336.]"

Since this was an interstate shipment plaintiff could have no cause of action against either the initial carrier or the connecting carrier which negligently caused the loss, under the laws or juridicial policies of this State, and we must look to the Federal laws to ascertain if they will afford plaintiff a cause of action against either carrier, or against both.

The Supreme Court of the United States, in construing the Carmack Amendment to the Hepburn Act in Express Co. v. Croninger, 226 U. S. 491, decided not only that that amendment (341 U. S. Stat. L. 595) superseded and excluded all State laws and policies from the field of liability of the carrier growing out of interstate shipments (Bailey v. Railroad, supra) but also that it should be construed as preserving to the shipper every right and remedy he had under existing Federal laws not inconsistent with the provisions of the Act. "One illustration," say the court, "would be a right to a remedy against a succeeding carrier, in preference to proceeding against the primary carrier, for a loss or damage incurred upon the line of the former. The liability of such succeeding car-

rier in the route would be that imposed by this statute, and for which the first carrier might have been made liable.''

There is nothing in the act abrogating or impairing the right which the shipper had under existing Federal laws to pursue the connecting carrier whose wrong caused the loss and consequently plaintiff was entitled to sue the Wabash Company under the Federal laws for a negligent breach by that carrier of the contract of affreightment. It is wholly immaterial whether that carrier was a joint obligor with or merely the agent of the initial carrier. It had received the property under the contract which it was proceeding to perform, and in either case would be liable for its own negligent failure to carry out its terms. And the right of plaintiff to pursue the initial carrier is just as clear and depends in no manner upon the question of whether or not the contract was joint in form. The Carmack Amendment provides:

''That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided;* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

''That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the

loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transscript thereof.''

Regardless of the form or terms of the written contract or of the relationship between the parties it attempted to establish, the initial carrier, the Burlington Company, is liable to plaintiff for any loss caused by that company, or its connecting carrier, the Wabash Company, and may have recourse against the latter company in another action if it is compelled to compensate plaintiff in damages for a loss caused by the negligence of the Wabash.

We know of no reason which would prevent plaintiff from joining the two carriers as defendants in one action. The cause of action against each is the same, viz., the negligent breach of the shipping contract, and for such cause the Federal laws impose a liability upon each which may be enforced in a single action.

There is no merit in the point that plaintiff, by asserting a cause of action under the State laws has precluded himself from recovering under the Federal laws. He has not, and could not have, an action under the State laws which, as stated, have been completely superseded, and since he alleges and proves facts disclosing a cause under the Carmack Amendment, he may recover because he has both alleged and proved a good cause of action. [Wulf v. Railway, 226 U. S. 570.] The case of Moliter v. Railroad, 180 Mo. App. 84, does not hold to the contrary. There the petition stated an action under a State statute, while the proof showed a cause under the Federal Employers' Liability Act. In holding that there was a fatal variance between allegation and proof, we distinguished that case from Wulf v. Railway, supra, on the ground that in the latter case the facts alleged constituted a cause of action under the Federal laws, though the plaintiff

mistakenly averred that the action was brought under a State statute. We, therefore, recognized the rule we are now applying and which is supported by the decision in the Wulf case that the plaintiff's mistaken view of the law controlling his case will not defeat his recovery under the Carmack Amendment if his petition alleges and his proof sustains the constitutive facts of a cause of action under that law.

It follows from these considerations that the court erred in sustaining the Burlington Company's demurrer to the evidence, and the order and judgment granting plaintiff a new trial should be affirmed. Since no appeal was taken from the order granting the Wabash Company a new trial that order cannot be set aside by us. The cause will stand in the circuit court for trial anew against both defendants.

Affirmed. All concur.